Mark L. Smith (Utah Bar #11367)
Michelle Correll (California Bar # 229488)
D. Loren Washburn (Utah Bar #10993)
Jacob L. Fonnesbeck (Utah Bar #14176)
SMITH CORRELL, LLP
50 West Broadway, Suite 1010
Salt Lake City, Utah 84101
Phone: (801) 436-5550
Fax: (877) 730-5910
msmith@smithcorrell.com
mcorrell@smithcorrell.com
lwashburn@smithcorrell.com
jfonnesbeck@smithcorrell.com

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| S.G., by and through her general guardian, BRENT GORDON; L.D., by and through her general guardian, JASON DIXON; B.S., by and through her general guardian, LISA SIMMONS; M.C., by and through her general guardian, BARBARA CALCHERA; D.R., by and through her general guardian, BRET ROBISON; I.N., by and through her general guardian, MANUEL NOGALES, individually and on behalf of all those similarly situation,<br><br>     Plaintiffs,<br><br>vs.<br><br>JORDAN SCHOOL DISTRICT, GRANITE SCHOOL DISTRICT, CANYONS SCHOOL DISTRICT, UTAH HIGH SCHOOL ACTIVITIES ASSOCIATION, INC., PATRICE JOHNSON, MARTIN BATES, AND JAMES BRISCOE,<br><br>     Defendants. | **COMPLAINT**<br><br>**Proposed Class Action**<br><br>Case No. 2:17-cv-00677-BCW |

Plaintiffs are female students who file this action individually and on behalf of a class of

all similarly situated female students and hereby allege and complain as follows:

## INTRODUCTION

1.      Plaintiffs bring this action individually and on behalf of a class of current and prospective female students to remedy the unlawful sex discrimination of Jordan School District, Granite School District, and Canyons School District ("Districts"); district employees Patrice Johnson, Martin Bates, and James Briscoe district employees (the "individual District Defendants"); and Utah High School Activities Association ("UHSAA") (collectively all defendants are referred to hereinafter as "Defendants") against present and future female student athletes who attend or who will attend the high schools in the Districts who are denied  the opportunity to participate in sports not offered by Defendants on equal terms as male students.

2.      Defendants discriminate on the basis of sex because, among other things, (1) they provide male students with the opportunity to play on boys football teams but do not offer female students the opportunity to play on girls football teams students and (2) their conduct results in male students having greater opportunity and greater rates of participation in sports than female students. Defendants' unlawful sex discrimination violates female students' rights under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, and the regulations adopted pursuant thereto, 34 C.F.R. Part 106 (collectively, "Title IX").  In addition, Defendants' unlawful sex discrimination violates the United States Constitution as enforced through 42 U.S.C. § 1983.

3.      Defendants have unlawfully failed to provide female students the opportunity to play football on girls football teams while providing the opportunity for male students to play football on boys football teams.

4.      Defendants have unlawfully failed to provide female student athletes equal

treatment and benefits as compared to male athletes.

5.      Defendants have intentionally discriminated against female student athletes by funding, authorizing, constructing, renovating, and maintaining football facilities, fields and stadiums intended for male football players who play on boys football teams, while at the same time refusing to provide female students the opportunity to play on officially sponsored girls football teams using the same facilities, fields and stadiums as boys football teams.

6.      Districts and the individual District Defendants have discriminated against the female high school students who attend high schools in the Districts by failing to provide them with an equal opportunity to participate in high school athletic programs.  Notwithstanding the significant number of female students who have the interests and ability to participate in athletics, the Districts and the individual District Defendants have failed to offer the female students at their high schools athletic opportunities proportionate to their enrollment numbers.  As a result, female students have been unable to participate in team sports, have been deterred from participating, and have been excluded from the Districts' high school athletic programs.

7.      Districts cannot demonstrate that their programs nevertheless comply with Title IX despite the failure to provide proportionate numbers of athletic opportunities to female students at their high schools.  Districts do not have a history and continuing practice of expanding their athletic programs in response to the developing interests and abilities of female students.  In fact, the UHSAA, in which each of the high schools in the Districts are members, has failed to sanction a new high school sport for girls in nearly thirty years.  While the UHSAA has recently sanctioned lacrosse in the coming years, the decision will not remedy the disparity in participation opportunities.

8.      Accordingly, the failure to provide female students with an equal opportunity to

participate in athletics at high schools in the Districts is intentional and has occurred without justification or defense by the Districts and in total disregard for the female students who have the interest and ability to participate in sports.

9.    Defendants' purposeful differential treatment of female students at high schools within the Districts reveals an utter disregard for laws protecting against such invidious sex discrimination and constitutes intentional discrimination.

10.    Plaintiffs seek preliminary and permanent injunctive relief and file this action to stop Defendants from discriminating against them and all others similarly situated by offering girls high school football teams and other girls high school sports necessary to provide equal participation opportunities to female students as well as equal treatment and benefits as required by Title IX and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

11.    Plaintiffs seek monetary and compensatory damages for Defendants' violation of Title IX and for violation of their constitutional rights.

12.    Plaintiffs have been required to retain attorneys to prosecute this action.  Plaintiffs are entitled to recover their reasonable attorneys fees for all claims pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

13.    Plaintiffs bring this suit under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and its implementing and interpreting regulations and under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution as enforced through 42 U.S.C. § 1983.  This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4).

14.    Declaratory and other relief is authorized pursuant to 28 U.S.C. § 2201 and 28

U.S.C. § 2202 for the purpose of determining a question of factual controversy that exists between the parties. A declaration of the correct interpretation of the legal requirements described in this complaint is necessary and appropriate to determine the respective rights and duties of the parties to this action.

15.    Venue is proper in the District of Utah pursuant to 28 U.S.C. § 1391(b), because the events giving rise to Plaintiffs' claims occurred in this District. All Plaintiffs and Defendants reside in this District and all of the illegal acts of the individual Defendants described herein occurred in the District.

## PARTIES -- PLAINTIFFS

16.    Plaintiff, Brent Gordon, is a Utah resident who is the natural father and general guardian of S.G., a minor. S.G. is eligible to play high school sports for Herriman High School in the Jordan School District. Defendants have discriminated against S.G. on the basis of her sex by denying her equal athletic opportunities and equal treatment and benefits and will be irreparably harmed if Defendants are not restrained from continuing to discriminate against her based on her sex.

17.    Plaintiff, Jason Dixon, is a Utah resident and the natural father and general guardian of L.D., a minor. L.D. is eligible to play high school sports for Copper Hills High School in the Jordan School District. Defendants have discriminated against L.D. on the basis of her sex by denying her equal athletic opportunities and equal treatment and benefits and will be irreparably harmed if Defendants are not restrained from continuing to discriminate against her based on her sex.

18.    Plaintiff, Lisa Simmons, is a Utah resident and the natural mother and general guardian of B.S., a minor. B.S. is eligible to play high school sports for Riverton High School in

the Jordan School District.  Defendants have discriminated against B.S. on the basis of her sex by denying her equal athletic opportunities and equal treatment and benefits and will be irreparably harmed if Defendants are not restrained from continuing to discriminate against her based on her sex.

19.     Plaintiff, Barbara Calchera, is a Utah resident and the natural mother and general guardian of M.C., a minor.  M.C. is eligible to play high school sports for Hillcrest High School in the Canyons School District.  Defendants have discriminated against M.C. on the basis of her sex by denying her equal athletic opportunities and equal treatment and benefits and will be irreparably harmed if Defendants are not restrained from continuing to discriminate against her based on her sex.

20.     Plaintiff, Bret Robison, is a Utah resident and the natural father and general guardian of D.R., a minor.  D.R. is eligible to play high school sports for Kearns High School in the Granite School District.  Defendants have discriminated against D.R. on the basis of her sex by denying her equal athletic opportunities and equal treatment and benefits and will be irreparably harmed if Defendants are not restrained from continuing to discriminate against her based on her sex.

21.     Plaintiff, Manuel Nogales, is a Utah resident and the natural father and general guardian of I.N., a minor.  I.N. is eligible to play high school sports for Granger High School in the Granite School District.  Defendants have discriminated against I.N. on the basis of her sex by denying her equal athletic opportunities and equal treatment and benefits and will be irreparably harmed if Defendants are not restrained from continuing to discriminate against her based on her sex.

## PARTIES -- DEFENDANTS

22.     Defendant Jordan School District is a Utah public school district, located within the jurisdiction of this court.  The Jordan School District is a state actor subject to the Fourteenth Amendment's Equal Protection Clause, as enforced through 42 U.S.C. § 1983.

23.     The Jordan School District receives federal funding so its programs and activities are governed by the requirements of Title IX pursuant to 20 U.S.C. § 1687.

24.     The Jordan School District is authorized to operate, and does operate, Herriman High School, Riverton High School, Bingham High School, West Jordan High School, and Copper Hills High School ("Jordan School District High Schools"), and is responsible for the conduct of each high school in the district.

25.     Defendant Granite School District is a Utah public school district, located within the jurisdiction of this court.  The Granite School District is a state actor subject to the Fourteenth Amendment's Equal Protection Clause, as enforced through 42 U.S.C. § 1983.

26.     The Granite School District receives federal funding so its programs and activities are governed by the requirements of Title IX pursuant to 20 U.S.C. § 1687.

27.     The Granite School District is authorized to operate, and does operate, Cottonwood High School, Cyprus High School, Granger High School, Hunter High School, Kearns High School, Olympus High School, Skyline High School, and Taylorsville High School ("Granite School District High Schools"), and is responsible for the conduct of each high school in the district.

28.     Defendant Canyons School District is a Utah public school district located within the jurisdiction of this court.  The Canyons School District is a state actor subject to the Fourteenth Amendment's Equal Protection Clause, as enforced through 42 U.S.C. § 1983.

29.     The Canyons School District receives federal funding so its programs and activities

are governed by the requirements of Title IX pursuant to 20 U.S.C. § 1687.

30.     The Canyons School District is authorized to operate, and does operate, Alta High School, Brighton High School, Corner Canyon High School, Hillcrest High School, and Jordan High School ("Canyons School District High Schools"), and is responsible for the conduct of each high school in the district.

31.     Defendant Patrice Johnson ("Johnson") is the Superintendent of the Jordan School District.  Johnson has authority and control over the high schools in the Jordan School District, including their policies, practices, procedures, facilities, maintenance, programs, activities, services, and employees in the district's high schools' athletic departments.  Johnson is responsible for ensuring that the high schools in the Jordan School District comply with anti-discrimination laws.  Johnson is a resident of Utah.  Johnson is sued in her official capacity.

32.     Defendant Martin Bates ("Bates") is the Superintendent of the Granite School District.  Bates has authority and control over the high schools in the Granite School District, including their policies, practices, procedures, facilities, maintenance, programs, activities, services, and employees in the district's high schools' athletic departments.  Bates is responsible for ensuring that the high schools in the Granite School District comply with anti-discrimination laws.  Bates is a resident of Utah.  Bates is sued in his official capacity.

33.     Defendant James Briscoe ("Briscoe") is the Superintendent of the Canyons School District.  Briscoe has authority and control over the high schools in the Canyons School District, including their policies, practices, procedures, facilities, maintenance, programs, activities, services, and employees in the district's high schools' athletic departments.  Briscoe is responsible for ensuring that the high schools in the Canyons School District comply with anti-discrimination laws.  Briscoe is a resident of Utah.  Briscoe is sued in his official capacity.

34.     Utah High School Activities Association ("UHSAA") is a state actor subject to the Fourteenth Amendment's Equal Protection Clause, as enforced through 42 U.S.C. § 1983.

35.     UHSAA, along with input from the Utah State Board of Education and the 115 public schools that are members of the UHSAA, regulates interscholastic sport among Utah's public, charter, and private high schools.

36.     UHSAA and the Utah State Board of Education, state school districts, and state high schools, are significantly entwined as follows:

a.     The UHSAA Handbook includes a joint statement from UHSAA and the Utah State Board of Education regarding the purpose of extracurricular activities in Utah schools and set forth general guidelines and standards for member schools.

1.     The standards outline when activities should take place and require that head coaches hold a teaching license or complete training programs.

2.     The standards require administrators, coaches, and participants to adhere to standards set forth by the Utah legislature in Utah Code Ann. § 53A-11-908.

3.     The guidelines are directed to "local boards of education, superintendents, and school principals."

4.     The guidelines govern when public school officials may travel and schedule events.

5.     The guidelines govern curriculum of physical education classes in public high schools.

b.     The UHSAA Constitution is endorsed by the State of Utah.

c.     Membership in the UHSAA is open to any Utah high school.

d.  Voting members of the UHSAA Board of Trustees are limited to individuals who are elected school board members, school district superintendents, high school principals, members of the Utah State Board of Education, charter school representatives and private school representatives.

e.  During the 2015-16 school year there were 146 member schools of the UHSAA, of which 115 were Utah public schools, 14 were Utah public charter schools, and 17 were private schools located within the state of Utah.

f.  Each member school pays dues that are used to finance the operations of the UHSAA.  The UHSAA is funded in significant part by these dues, a substantial portion of which represent public funds.

g.  Coaches must be certified by the UHSAA, but verifying the UHSAA certification is delegated to schools, including Utah public schools, districts, or their governing boards.

h.  UHSAA and Utah State Board of Education jointly require that all coaches overseeing sports in member schools meet specific training and certification requirements.

i.  The current president of the UHSAA is an elected board member of the Nebo School District Board of Education.

j.  Most public school coaches certified by UHSAA have a state teaching license.

k.  Players participating in UHSAA sanctioned activities must meet minimum academic standards to participate.

l.  Most school districts allow players to fulfill physical education requirements necessary to graduate from high school by participating in UHSAA sanctioned

athletic activities.

## CLASS ALLEGATIONS

37.     The named Plaintiffs bring this action, including all three causes of action, on behalf of themselves and on behalf of a class of all those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

### DEFINITION

38.     Plaintiffs seek to represent a class of all present and future female high school students attending high schools in the Districts and potential and future female students who participate, seek to participate, and/or are deterred from participating in sports or teams not offered at high schools in the Districts, including girls football teams.

39.     Each of the named Plaintiffs is a member of the proposed class and has been or will be injured by Defendants' sex discrimination and failure to provide female students with an opportunity equal to male students to participate in football at the high schools within the Districts.

### NUMEROSITY.

40.     Plaintiffs seek to represent the proposed class because joinder of all class members and all persons harmed by Defendants' failure to provide equal opportunity to participate in athletics is impracticable.

41.     Plaintiffs are informed and believe, based on public records requests and publicly reported statistics and, based thereon allege, that there are more than 5,000 females who attend one of the high schools in the Jordan School District.  Plaintiffs are informed and believe, based on public records requests and publicly reported statistics and, based thereon allege, that there are more than 8,000 females who attend one of the high schools in the Granite School District.  The plaintiffs are informed and believe, based on public records requests and publicly reported

statistics and, based thereon allege, that there are more than 5,000 females who attend one of the high schools in the Canyons School District. It is unknown how many of these current female students or how many future female students would seek to participate in interscholastic athletics if additional opportunities were available. Moreover, members of the class who may suffer future injury are not capable of being identified at this time, as the class includes future female students and the class is constantly in flux, with students graduating and new students attending each year.

42.    Defendants have not surveyed present or prospective female students to assess their athletic interests and abilities.

### COMMON QUESTIONS OF FACT AND LAW.

43.    Common questions of law and fact predominate and include: (a) whether female student athletes are being deprived of equal opportunities to participate in sports as required by Title IX, regulations thereunder, and the United States Constitution; and (b) whether female student athletes are being deprived of the opportunity to participate in football and receive equal treatment with regard to the use of their high school football facilities as required by Title IX, regulations thereunder, and the United States Constitution. Because claims brought to enforce rights to equal opportunities, treatment, and benefits in athletics under Title IX require comparison of the sex-segregated male and female athletic opportunities as a whole, the issues are inherently class-based.

### TYPICALITY.

44.    The claims of the named Plaintiffs are typical of the claims of the class. The types of discrimination that Plaintiffs have suffered as a result of their sex include exclusion from opportunities to participate in sports programs, fewer and less appealing sports programs offered to members of their sex, and the opportunity to participate in girls football teams; these types of

discrimination are typical of the sex discrimination which members of the class have suffered, are suffering, and, unless this Court grants relief, will continue to suffer.

45.     Plaintiffs are members of the proposed class in that they are current female students who are eligible to participate in high school athletic activities and who are subjected to sex discrimination due to the Defendants' refusal to provide them with equal opportunities to participate in athletics, including, but not limited to, playing on girls high school football teams. The named Plaintiffs each desire to play high school football on a girls football team. Plaintiffs S.G., L.D., and B.S. are eligible to play for a high school team in the Jordan School District. Plaintiffs I.N. and D.R. are eligible to play for high schools in the Granite School District. Plaintiff M.C. is eligible to play for a high school in the Canyons School District.

### ADEQUACY OF REPRESENTATION BY CLASS REPRESENTATIVES.

46.     The named Plaintiffs are members of the proposed class and will fairly and adequately represent and protect the interests of the class. Plaintiffs intend to prosecute this action rigorously to secure remedies for the entire class.

47.     Plaintiffs' counsel are experienced, qualified, and competent in federal litigation and will adequately represent the interests of the class in this action.

### NATURE OF NOTICE TO PROPOSED CLASS.

48.     Plaintiffs propose to provide notice to class members by email.

49.     Plaintiffs satisfy the class certification requirements of the Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted, will imminently act, or have refused to act on grounds generally applicable to the class, denying female students an equal opportunity to participate in football by refusing to offer girls football teams, thereby making final declaratory and injunctive relief appropriate to the class as a whole.

## GENERAL ALLEGATIONS

### TITLE IX.

50.     Title IX, enacted in 1972, provides in relevant part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

51.     The Civil Rights Restoration Act of 1987 made clear Congress' intent that the terms "program or activity" in the Title IX context mean any program or activity sponsored by the public institution so long as any part of the public institution receives federal financial assistance. *See* 20 U.S.C. § 1687.  Accordingly, Districts are subject to Title IX even if none of the funding for Districts' high school sports programs comes from federal sources because the Districts receive federal funding for at least their non-sports programs.

52.     In 1975, the United States Department of Health, Education and Welfare ("HEW"), which is the predecessor of the United States Department of Education ("DOE"), adopted regulations interpreting Title IX, codified at 34 C.F.R. Part 106 and adopted at 45 C.F.R. Part 86 (the "Regulations").  Within the DOE, the Regulations are enforced by the Office for Civil Rights ("OCR").

53.     Regarding athletic programs, 34 C.F.R. 106.41(a) provides that interscholastic athletics are included within the "program or activity" requirements of Title IX:

No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club, or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis.

54.     34 C.F.R. 106.41(c) specifies ten factors that may be considered in the

determination of equal athletic opportunity:

1. Whether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes;

2. The provision of equipment and supplies;

3. Scheduling of games and practice time;

4. Travel and per diem allowance;

5. Opportunity to receive coaching and academic tutors;

6. Assignment and compensation of coaches and tutors;

7. Provision of locker rooms, practice and competitive facilities;

8. Provision of medical training facilities and services;

9. Provision of housing and dining facilities and services; and

10. Publicity.

Another factor to be considered is a school's "failure to provide necessary funds for teams for one sex in assessing equality of opportunity for members of each sex." *Id.* Subsection (a)(1) addresses sex discrimination in the allocation of athletic participation opportunities.

55.    In 1979, the OCR issued a policy interpretation of Title IX and the Regulations. That policy interpretation is located at 44 Federal Register 71,413 (1979) (the 1979 Policy Interpretation").

56.    The Policy Interpretation provides that in order to comply with Title IX and 34 C.F.R. 106.41, schools must provide equal athletic opportunities in three general areas:  (1) equal athletic participation opportunities; (2) equal treatment and benefits to those with participation opportunities; and (3) equal athletic financial assistance.

TITLE IX'S TREATMENT OF CONTACT SPORTS.

57.     The 1979 Policy Interpretation addresses when a school must offer contact sports to girls, such as football.  *See* 1979 Policy Interpretation at VII(C)(4); *see also* 31 C.F.R. § 28.450(b) (stating that "[f]or the purposes of these Title IX regulations, contact sports include . . . football.").

58.     The 1979 Policy Interpretation states that schools must offer football to girls under the following circumstances:

> Effective accommodation means that if an institution sponsors a team for members of one sex in a contact sport, it must do so for members of the other sex under the following circumstances:
>
> The opportunities for members of the excluded sex have historically been limited; and
>
> There is sufficient interest and ability among the members of the excluded sex to sustain a viable team and a reasonable expectation of intercollegiate competition for that team.  *Id.*

## TITLE IX'S TREATMENT OF PARTICIPATION OPPORTUNITIES GENERALLY.

59.     Compliance in the area of equal athletic participation opportunities generally is determined under the following three-part test:

1. Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments;

2. Where the members of one sex have been and are under-represented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or

3. Where the members of one sex are under-represented among intercollegiate athletes and the institution cannot show a continuing practice of program expansion such as cited above, whether it can be demonstrated that the interests and abilities of the members of that sex have been fully and effectively accommodated by the present program.

*See* 44 Fed. Reg. 71,418.

60.     Every federal court of appeals that has considered the three-part test has upheld it

as valid and has given it substantial deference in applying Title IX or in assessing Title IX compliance, including the Tenth Circuit Court of Appeals. *See Roberts v. Colorado State Bd. Of Agric.*, 998 F.2d 824, 828 (10th Cir. 1993) (explaining that courts defer to an agency's interpretation of its own regulation).

61.    The Regulations require that sponsors of interscholastic athletics, including Districts, take such remedial actions as are necessary to overcome the effects of sex discrimination in violation of Title IX. *See* 34 C.F.R. § 106.3(a).

62.    The Regulations also require that recipients of federal funding, like Districts, adopt nondiscrimination policies and grievance procedures, appoint and train Title IX officers to receive and investigate sex discrimination complaints, and disseminate this information to all students, faculty, and employees. *See* 34 C.F.R. § 106.8 and 106.9. The Regulations further require that recipients promise and confirm compliance by filing an Assurance of Compliance with the DOE each time they apply for or receive federal financial assistance. *See* 34 C.F.R. § 106.4.

63.    The Regulations further require that sponsors of interscholastic athletics comply with the athletic regulations within three years of their effective date, which was July 21, 1975.

64.    Jordan School District High Schools have taken no recent remedial actions to satisfy their obligations under Title IX and have never provided female students with an equal opportunity to participate in athletics at its high schools. Now, more than 40 years after the deadline, Jordan School District High Schools remain non-compliant with Title IX.

65.    Granite School District High Schools have taken no recent remedial actions to satisfy their obligations under Title IX and have never provided female students with an equal opportunity to participate in athletics at its high schools. Now, more than 40 years after the deadline, Granite School District High Schools remain non-compliant with Title IX.

66.     Canyons School District High Schools have taken no recent remedial actions to satisfy their obligations under Title IX and have never provided female students with an equal opportunity to participate in athletics at its high schools. Now, more than 40 years after the deadline, Granite School District High Schools remain non-compliant with Title IX.

67.     The UHSAA has not sanctioned any new sports in 27 years, when it sanctioned girls softball in 1990.  The UHSAA has recently decided to sanction lacrosse for boys and girls for an upcoming school year.

68.     The UHSAA sanctioned separate golf teams for girls in 2008.

69.     Thus, in the past 27 years the only action the UHSAA has taken to expand athletic opportunities for girls was to sanction separate girls golf teams nearly a decade ago.

70.     Open records requests made to the Districts in 2017 revealed that administrators had no documentation whatsoever addressing their assessment of Title IX compliance, plans to comply with Title IX, expansion of opportunities for girls' participation of sports, or surveys of female students' interests or abilities.

## FIRST CAUSE OF ACTION

### (Violation of Title IX – Failure to Provide Girls Football)

### (Brought Against Districts)

71.     Plaintiffs reallege and incorporate by reference each of the foregoing allegations.

72.     Districts have been and are discriminating against present and future female students in violation of Title IX for failing to provide female students with the opportunity to play football on girls football teams.

73.     Plaintiffs bring this claim individually and as a class action as set forth in the Class Allegations.

18

74.     Under the 1979 Policy Interpretation, high schools within the Districts must offer football to girls if the Districts offer football to boys, have historically provided limited opportunities for girls, and there is sufficient interest among girls to sustain viable teams and a reasonable expectation for interscholastic competition.

75.     Each of the Jordan School District High Schools offers boys football teams.

76.     Each of the Granite School District High Schools offers boys football teams.

77.     Each of the Canyons School District High Schools offers boys football teams.

78.     None of the Jordan School District High Schools offer girls football teams.

79.     None of the Granite School District High Schools offer girls football teams.

80.     None of the Canyons School District High Schools offer girls football teams.

81.     Each of the Jordan School District High Schools has historically limited and currently limit the opportunities for girls to participate in sports.

82.     The Jordan School District High Schools have historically limited and currently limit opportunities to girls to participate in sports as compared to boys.  The following table shows the numbers of girls compared to boys who have participated in sports at each of the high schools in the Jordan School District over the past three school years:

|  | 2014-15 | | 2015-16 | | 2016-17 | |
|  | Boys | Girls | Boys | Girls | Boys | Girls |
| West Jordan | 280 | 195 | 315 | 190 | 346 | 195 |
| Riverton | 502 | 343 | 489 | 346 | 497 | 344 |
| Herriman | 468 | 326 | 558 | 372 | 586 | 378 |
| Copper Hills | 500 | 371 | 518 | 357 | 505 | 413 |
| Bingham | 547 | 355 | 563 | 341 | 559 | 367 |
|  | 2297 | 1590 | 2443 | 1606 | 2493 | 1697 |

83.     Boys attending high schools in Jordan School District High Schools had 44 percent, 52 percent, and 47 percent more athletic participation and opportunities than girls during the 2014-15, 2015-16, and 2016-17 school years, respectively.

19

84.     Each of the Granite School District High Schools have historically limited and currently limit opportunities to girls to participate in sports as compared to boys.  The following table shows the numbers of girls compared to boys who have participated in sports at each of the Granite School District High Schools over the past three school years:

|  | 2014-15 | | 2015-16 | | 2016-17 | |
|---|---|---|---|---|---|---|
|  | Boys | Girls | Boys | Girls | Boys | Girls |
| Cottonwood | 292 | 207 | 296 | 227 | 342 | 205 |
| Cyprus | 248 | 185 | 292 | 192 | 371 | 231 |
| Granger | 314 | 228 | 314 | 247 | 368 | 274 |
| Hunter | 283 | 219 | 375 | 286 | 316 | 248 |
| Kearns | 261 | 180 | 270 | 192 | 414 | 239 |
| Olympus | 343 | 244 | 424 | 311 | 409 | 306 |
| Skyline | 305 | 239 | 382 | 319 | 374 | 275 |
| Taylorsville | 303 | 191 | 288 | 206 | 285 | 199 |
|  | 2349 | 1693 | 2641 | 1980 | 2879 | 1977 |

85.     Boys attending Granite School District High Schools had 43 percent, 33 percent, and 46 percent more athletic participation and opportunities than girls during the 2014-15, 2015-16, and 2016-17 school years, respectively.

86.     Each of the Canyons School District High Schools have historically limited and currently limit opportunities to girls to participate in sports as compared to boys.  The following table shows the numbers of girls compared to boys who have participated in sports at each of the Canyon School District High Schools over the past three school years:

|  | 2014-15 | | 2015-16 | | 2016-17 | |
|---|---|---|---|---|---|---|
|  | Boys | Girls | Boys | Girls | Boys | Girls |
| Alta | 398 | 228 | 382 | 249 | 404 | 283 |
| Brighton | 412 | 277 | 419 | 310 | 420 | 298 |
| Corner Canyon | 485 | 266 | 531 | 368 | 514 | 377 |
| Hillcrest | 336 | 264 | 343 | 294 | 361 | 284 |
| Jordan | 417 | 203 | 542 | 305 | 418 | 208 |
|  | 2048 | 1238 | 2217 | 1526 | 2117 | 1450 |

87.     Boys attending Canyons School District High Schools had 65 percent, 45 percent,

and 46 percent more athletic participation and opportunities than girls during the 2014-15, 2015-16, and 2016-17 school years, respectively.

88.    There is sufficient interest and ability among female students attending high schools in the Districts who want to play football to sustain viable teams and a reasonable expectation of interscholastic competition for those teams.

89.    The average football roster size in the youth football league that serves the Salt Lake County area, Ute Conference, Inc., is 19 players, with some teams having as few as 14 players.

90.    Only 14 girls who wanted to play football at any given high school would be sufficient to form a viable high school football team.

91.    Plaintiff S.G. helped form an all girls football league in Spring 2015 called Utah Girls Tackle Football League, Inc., ("UGTFL") with the majority of girls residing in the Jordan School District boundaries.

92.    UGTFL limited participation to 50 girls in its first year and those spots filled up in less than a week from the date registration opened.

93.    Participation grew exponentially.

94.    In Spring 2016, participation expanded to approximately 100 girls.

95.    In Spring 2017, participation expanded to approximately 200 girls.

96.    Participation in the UGTFL is expected to continue to grow exponentially.

97.    Approximately 100 girls who played in the league during Spring 2017 will be eligible to play high school sports at high schools in the Districts during the 2017-18 school year.

98.    In Spring 2017, Herriman High School approved the Herriman Girls High School Football Club ("Girls Football Club").

99.    The Girls Football Club was authorized to provide information to incoming sophomores at its Sophomore Orientation in March 2017.

100.    Approximately 250 girls in ninth grade who attend a junior high that feeds into Herriman High School visited the club's presentation table during the orientation.

101.    Nearly 50 girls who attended Herriman High School's Sophomore Orientation signed a form stating that they would like to learn more about girls football.

102.    Four girls joined the UGTFL as a direct result of learning about girls football at Sophomore Orientation.

103.    Two other girls' parents reached out later to sign their daughters up to play in the UGTFL but the rosters were filled at that time so they were turned away.

104.    There is no reason to believe the interest among incoming sophomore girls playing high school football on a girls' football team is disproportionate to the interest among the class members in general.

105.    If the interest expressed by incoming sophomore girls who attended the Herriman High School Sophomore Orientation is extrapolated to the 1372 female students who attended Herriman High School and the approximate 500 ninth graders who attended one of three middle schools that feed into Herriman High School, it would be expected that 372 girls would express interest in learning more about girls football and approximately 45 girls would join a team if the Jordan School District offered the girls at Herriman High School the opportunity to participate in a girls football team.  This level of interest would provide three times the number of participants necessary to form a viable team.

106.    The foregoing computation of expected interest, however, is conservative because the interest expressed at Sophomore Orientation was to learn about joining a club loosely affiliated

22

with an independent community recreational league team, not an official high school football team.

107.    Although data on the difference in interest and participation in independent community recreational teams and official high school football teams is not available, based on anecdotal observation and general community interest among boys, it is anticipated that the interest among class members in participation in an official high school football team would exceed the interest in participation in an independent community recreational league.

108.    More girls would be interested in playing football for their high school team than a recreational league team because (1) they could play for their high school team on the high school football field on Friday nights under the lights with cheerleaders and the school band supporting them, (2) they could earn a varsity letter and other awards and recognition that are considered by many colleges and universities in making admission and scholarship decisions, (3) they would have higher quality coaches, (4) they could compete for regional and state championships, (5) they could earn credit toward graduation for physical education class, and (6) they could have their accomplishments highlighted and recognized during school pep rallies, in school newspapers and websites, on school social media pages, and in local and national news outlets. *See* 34 C.F.R. § 106.41(c)(2) through (10) (requiring equal treatment of girls' teams in terms of equipment, coaching, facilities, and publicity).

109.    There is no reason to believe that the interest expressed at the Herriman High School Sophomore Orientation is unique to girls who attend schools in Herriman.  Accordingly, the same interest in girls football would prevail at Jordan School District High Schools, Granite Schools District High Schools, and Canyons School District High Schools.

110.    Plaintiffs will be irreparably harmed if Districts continue to refuse to offer girls football teams because Plaintiffs' enrollment in high school is limited in time so they will lose

their opportunity to play girls high school football if injunctive relief is not granted.  There is no adequate remedy at law for this harm.

111.    The continuing harm caused by Districts' sex discrimination far outweighs any possible harm caused to Districts if injunctive relief is granted.

112.    Plaintiffs will lose out on the lifetime benefits from participation in sports if injunctive relief is not granted.  Monetary damages are not adequate to compensate Plaintiffs for the harm.

113.    Injunctive relief will promote the public's interest in ending sex discrimination in public schools.

114.    As a result of Districts' discriminatory actions, Plaintiffs have been denied their civil right to participate on a girls football team and the accompanying educational, physical, psychological, and academic benefits of participating in athletics. Plaintiffs have incurred and will imminently incur compensatory damages for Districts' violation of Title IX, including lost opportunity, emotional distress, humiliation, and denial of equal opportunity because of sex. Plaintiffs are entitled to recover, in an amount to be proved at trial, compensatory damages for Districts' violation of Title IX.

115.    Plaintiffs are entitled to expedited preliminary injunctive relief and permanent injunctive relief in the form of an order requiring Districts to offer girls football at the high schools in the Districts for Districts' violation of Title IX's requirement that institutions offer football to girls if they offer it to boys and enough girls are interested in playing football to form teams that can compete against each other.

116.    A present and actual controversy exists between Plaintiffs and Districts concerning their rights and respective duties.  Plaintiffs allege that Districts have violated their rights and the

rights of those similarly situated, under federal anti-discrimination laws. Declaratory relief is necessary and appropriate.

117.    Plaintiffs have been required to retain legal counsel and are entitled to recover attorney fees and expenses from Districts under 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION

**(Violation of Title IX – Failure to Provide Equal Participation Opportunities)**

**(Brought Against Districts)**

118.    Plaintiffs reallege and incorporate by reference each of the foregoing allegations.

119.    Districts have been and are currently discriminating against present and future female students in violation of Title IX for failing to provide female students with equal participation opportunities.

120.    Plaintiffs bring this claim individually and as a class action as set forth in the Class Allegations.

121.    Districts are obligated to provide equal participation opportunities to girls and boys in a number substantially proportionate to their respective enrollments.

122.    Districts fail to provide equal participation opportunities to girls in a number substantially proportionate to their enrollment.

123.    The 1979 Policy Interpretation sets forth a three-part test to determine whether an institution is complying with its obligation to effectively accommodate girls' interests in sports: (1) participation opportunities are substantially proportionate to respective enrollments; (2) institutions have a history of expanding opportunities for female athletes; or (3) the institution can show that girls' interests have been fully and effectively accommodated by their present sports programs.

124.    High schools in the Districts do not comply with any of the three tests.

125.    Under the first test, each of the high schools in the Districts provides substantially greater opportunities for male students relative to their enrollment than female students.

126.    The following table sets forth the participation opportunities and rates for girls, compared to boys, at the high schools in the Jordan School District during the past three years and establishes that the overall disparity in athletic opportunities at high schools in the Jordan School District is significant:

| | Sports Participation | | | | 2014-15 Enrollment | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Boys | Boys' Sports % | Girls | Total | Boys | Enrollment % | Girls | Total | Disparity |
| West Jordan | 280 | 0.589 | 195 | 475 | 761 | 0.501 | 758 | 1519 | 0.088 |
| Riverton | 502 | 0.594 | 343 | 845 | 987 | 0.491 | 1024 | 2011 | 0.103 |
| Herriman | 468 | 0.589 | 326 | 794 | 1156 | 0.505 | 1131 | 2287 | 0.084 |
| Copper Hills | 500 | 0.574 | 371 | 871 | 1274 | 0.509 | 1227 | 2501 | 0.065 |
| Bingham | 547 | 0.606 | 355 | 902 | 1129 | 0.486 | 1194 | 2323 | 0.120 |
| Total | 2297 | 0.591 | 1590 | 3887 | 5307 | 0.499 | 5334 | 10641 | 0.092 |

| | Sports Participation | | | | 2015-16 Enrollment | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Boys | Boys' Sports % | Girls | Total | Boys | Enrollment % | Girls | Total | Disparity |
| West Jordan | 315 | 0.624 | 190 | 505 | 843 | 0.493 | 867 | 1710 | 0.131 |
| Riverton | 489 | 0.586 | 346 | 835 | 1050 | 0.486 | 1111 | 2161 | 0.100 |
| Herriman | 558 | 0.600 | 372 | 930 | 1367 | 0.520 | 1264 | 2631 | 0.080 |
| Copper Hills | 518 | 0.592 | 357 | 875 | 1385 | 0.511 | 1328 | 2713 | 0.081 |
| Bingham | 563 | 0.623 | 341 | 904 | 1233 | 0.497 | 1248 | 2481 | 0.126 |
| Total | 2443 | 0.603 | 1606 | 4049 | 5878 | 0.503 | 5818 | 11696 | 0.101 |

| | Sports Participation | | | | 2016-17 Enrollment | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Boys | Boys' Sports % | Girls | Total | Boys | Enrollment % | Girls | Total | Disparity |
| West Jordan | 346 | 0.640 | 195 | 541 | 900 | 0.506 | 879 | 1779 | 0.134 |
| Riverton | 497 | 0.591 | 344 | 841 | 1061 | 0.482 | 1141 | 2202 | 0.109 |
| Herriman | 586 | 0.608 | 378 | 964 | 1454 | 0.515 | 1372 | 2826 | 0.093 |
| Copper Hills | 505 | 0.550 | 413 | 918 | 1420 | 0.510 | 1366 | 2786 | 0.040 |
| Bingham | 559 | 0.604 | 367 | 926 | 1293 | 0.508 | 1251 | 2544 | 0.095 |
| Total | 2493 | 0.595 | 1697 | 4190 | 6128 | 0.505 | 6009 | 12137 | 0.090 |

127.    Every single Jordan School District High School for each of the past three years has had a disparity of four percent or more, failing the first test. The Jordan School District as a whole fails the test as a whole with disparity in each year near ten percent.

128.    The following table sets forth the participation opportunities and rates for girls, compared to boys, at the high schools in the Canyons School District during the past three years

and establishes that the overall disparity in athletic opportunities at high schools in the Canyons School District is significant:

| | Sports Participation | | | | 2014-15 Enrollment | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Boys | Boys' Sports % | Girls | Total | Boys | Enrollment % | Girls | Total | Disparity |
| Alta | 398 | 0.636 | 228 | 626 | 864 | 0.510 | 829 | 1693 | 0.125 |
| Brighton | 412 | 0.598 | 277 | 689 | 955 | 0.491 | 989 | 1944 | 0.107 |
| Corner Canyon | 485 | 0.646 | 266 | 751 | 1021 | 0.523 | 933 | 1954 | 0.123 |
| Hillcrest | 336 | 0.560 | 264 | 600 | 1069 | 0.505 | 1049 | 2118 | 0.055 |
| Jordan | 417 | 0.673 | 203 | 620 | 1067 | 0.530 | 946 | 2013 | 0.143 |
| | 2048 | 0.623 | 1238 | 3286 | 4976 | 0.512 | 4746 | 9722 | 0.111 |

| | Sports Participation | | | | 2015-16 Enrollment | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Boys | Boys' Sports % | Girls | Total | Boys | Enrollment % | Girls | Total | Disparity |
| Alta | 382 | 0.605 | 249 | 631 | 850 | 0.488 | 893 | 1743 | 0.118 |
| Brighton | 419 | 0.575 | 310 | 729 | 1103 | 0.510 | 1058 | 2161 | 0.064 |
| Corner Canyon | 531 | 0.591 | 368 | 899 | 1078 | 0.516 | 1010 | 2088 | 0.074 |
| Hillcrest | 343 | 0.538 | 294 | 637 | 1091 | 0.503 | 1079 | 2170 | 0.036 |
| Jordan | 542 | 0.640 | 305 | 847 | 1061 | 0.525 | 959 | 2020 | 0.115 |
| | 2217 | 0.592 | 1526 | 3743 | 5183 | 0.509 | 4999 | 10182 | 0.083 |

| | Sports Participation | | | | 2016-17 Enrollment | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Boys | Boys' Sports % | Girls | Total | Boys | Enrollment % | Girls | Total | Disparity |
| Alta | 404 | 0.588 | 283 | 687 | 950 | 0.506 | 929 | 1879 | 0.082 |
| Brighton | 420 | 0.585 | 298 | 718 | 1041 | 0.500 | 1040 | 2081 | 0.085 |
| Corner Canyon | 514 | 0.577 | 377 | 891 | 1146 | 0.520 | 1057 | 2203 | 0.057 |
| Hillcrest | 361 | 0.560 | 284 | 645 | 1049 | 0.486 | 1110 | 2159 | 0.074 |
| Jordan | 418 | 0.668 | 208 | 626 | 1083 | 0.533 | 947 | 2030 | 0.134 |
| | 2117 | 0.593 | 1450 | 3567 | 5269 | 0.509 | 5083 | 10352 | 0.085 |

129.    Every single Canyons School District High School for each of the past three years has had a disparity of 3.6 percent or more, failing the first test.  The Canyons School District as a whole had a disparity of 8.5 to 11.1 percent in each year.

130.    The following table sets forth the participation opportunities and rates for girls, compared to boys, at the high schools in the Canyons School District during the past three years and establishes that the overall disparity in athletic opportunities at high schools in the Canyon School District is significant:

| | Sports Participation | | | | 2014-15 Enrollment | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Boys | Boys' Sports % | Girls | Total | Boys | Enrollment % | Girls | Total | Disparity |
| Cottonwood | 292 | 0.585 | 207 | 499 | 808 | 0.486 | 853 | 1661 | 0.099 |
| Cyprus | 248 | 0.573 | 185 | 433 | 809 | 0.496 | 823 | 1632 | 0.077 |
| Granger | 314 | 0.579 | 228 | 542 | 1400 | 0.483 | 1500 | 2900 | 0.097 |
| Hunter | 283 | 0.564 | 219 | 502 | 997 | 0.496 | 1013 | 2010 | 0.068 |
| Olympus | 343 | 0.584 | 244 | 587 | 747 | 0.496 | 759 | 1506 | 0.088 |
| Skyline | 305 | 0.561 | 239 | 544 | 679 | 0.483 | 728 | 1407 | 0.078 |
| Kearns | 261 | 0.592 | 180 | 441 | 1124 | 0.531 | 992 | 2116 | 0.061 |
| Taylorsville | 303 | 0.613 | 191 | 494 | 847 | 0.533 | 741 | 1588 | 0.080 |
| | 2349 | 0.581 | 1693 | 4042 | 7411 | 0.500 | 7409 | 14820 | 0.081 |

| | Sports Participation | | | | 2015-16 Enrollment | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Boys | Boys' Sports % | Girls | Total | Boys | Enrollment % | Girls | Total | Disparity |
| Cottonwood | 296 | 0.566 | 227 | 523 | 818 | 0.514 | 773 | 1591 | 0.052 |
| Cyprus | 292 | 0.603 | 192 | 484 | | #DIV/0! | | 0 | #DIV/0! |
| Granger | 314 | 0.560 | 247 | 561 | 1456 | 0.514 | 1379 | 2835 | 0.046 |
| Hunter | 375 | 0.567 | 286 | 661 | 1237 | 0.495 | 1264 | 2501 | 0.073 |
| Olympus | 424 | 0.577 | 311 | 735 | 738 | 0.504 | 725 | 1463 | 0.072 |
| Skyline | 382 | 0.545 | 319 | 701 | 681 | 0.485 | 722 | 1403 | 0.060 |
| Kearns | 270 | 0.584 | 192 | 462 | 1148 | 0.528 | 1026 | 2174 | 0.056 |
| Taylorsville | 288 | 0.583 | 206 | 494 | 855 | 0.518 | 795 | 1650 | 0.065 |
| | 2641 | 0.572 | 1980 | 4621 | 6933 | 0.509 | 6684 | 13617 | 0.062 |

| | Sports Participation | | | | 2016-17 Enrollment | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Boys | Boys' Sports % | Girls | Total | Boys | Enrollment % | Girls | Total | Disparity |
| Cottonwood | 342 | 0.625 | 205 | 547 | 1070 | 0.516 | 1003 | 2073 | 0.109 |
| Cyprus | 371 | 0.616 | 231 | 602 | 1309 | 0.520 | 1207 | 2516 | 0.096 |
| Granger | 368 | 0.573 | 274 | 642 | 1508 | 0.513 | 1432 | 2940 | 0.060 |
| Hunter | 316 | 0.560 | 248 | 564 | 1236 | 0.502 | 1224 | 2460 | 0.058 |
| Kearns | 414 | 0.634 | 239 | 653 | 1099 | 0.511 | 1050 | 2149 | 0.123 |
| Olympus | 409 | 0.572 | 306 | 715 | 796 | 0.503 | 785 | 1581 | 0.069 |
| Skyline | 374 | 0.576 | 275 | 649 | 678 | 0.473 | 754 | 1432 | 0.103 |
| Taylorsville | 285 | 0.589 | 199 | 484 | 835 | 0.501 | 832 | 1667 | 0.088 |
| | 2879 | 0.593 | 1977 | 4856 | 8531 | 0.507 | 8287 | 16818 | 0.086 |

131.     Every single Granite School District High School for each of the past three years has had a disparity of 4.6 percent or more, failing the first test.  The Granite School District as a whole had a disparity of 6.2 to 8.6 percent during the past three years.

132.     Under the second test, Districts cannot demonstrate a history of expanding participation opportunities for girls because the high schools within the Districts are members of the UHSAA, and UHSAA has not added any new girls sports in 27 years and the only action it has taken to expand opportunities for girls was to add separate golf teams nearly a decade ago.

133.     While UHSAA did recently approve lacrosse as a new sport, it did so for both boys and girls and it is anticipated that at least as many boys as girls will participate in lacrosse,

increasing the disparity in athletic opportunities at the high schools in the Districts instead of remedying the disparity.

134.    Under the third test, Districts cannot demonstrate that they have effectively accommodated the interests of their female students because they have done nothing to survey or otherwise evaluate the interests of their female students.

135.    In response to a public records request, Districts provided no documentation of any plans, surveys, assessments, or discussions related to any of the Districts' efforts to evaluate the interests of their female students or to evaluate whether its schools complied with Title IX.

136.    Plaintiffs will be irreparably harmed if Districts continue to refuse to offer girls football teams because Plaintiffs' enrollment in high school is limited in time so they will lose their opportunity to play if injunctive relief is not granted.  There is no adequate remedy at law for this harm.

137.    The continuing harm caused by Districts' sex discrimination far outweighs any possible harm caused to Districts if injunctive relief is granted.

138.    Plaintiffs will lose out on the lifetime benefits from participation in sports if injunctive relief is not granted and monetary damages are not adequate to compensate Plaintiffs for the harm.

139.    Injunctive relief will promote the public's interest in ending sex discrimination in public schools.

140.    As a result of Districts' discriminatory actions, Plaintiffs have been denied their civil right to participate on a girls football team and the accompanying educational, physical, psychological, and academic benefits of participating in athletics. Plaintiffs have incurred and will imminently incur compensatory damages for Districts' violation of Title IX, including lost

opportunity, emotional distress, humiliation, and denial of equal opportunity because of sex.

141.    Plaintiffs are entitled to expedited preliminary injunctive relief and permanent injunctive relief in the form of an order requiring Districts to offer girls football at the high schools in the Districts for Districts' violation of Title IX's requirement to provide equal participation opportunities to girls.

142.    A present and actual controversy exists between Plaintiffs and Districts concerning their rights and respective duties.  Plaintiffs allege that Districts have violated their rights and the rights of those similarly situated, under federal anti-discrimination laws.  Declaratory relief is necessary and appropriate.

143.    Plaintiffs have been required to retain legal counsel and are entitled to recover attorney fees and expenses from Districts under 42 U.S.C. § 1988.

### THIRD CAUSE OF ACTION

**(Violation of Title IX – Failure to Provide Equal Treatment and Benefits)**

**(Brought Against Districts)**

144.    Plaintiffs reallege and incorporate by reference each of the foregoing allegations.

145.    Districts have been and are currently discriminating against present and future female students in violation of Title IX for failing to provide female students with equal treatment and benefits.

146.    Plaintiffs bring this claim individually and as a class action as set forth in the Class Allegations.

147.    Districts are obligated to provide equal treatment and benefits to girls as they do boys.  *See* 34 C.F.R. § 106.41(c)(2) through (10) (requiring equal treatment of girls' teams in terms of equipment, coaching, facilities, and publicity).

148.    Districts fail to provide equal treatment and benefits to girls as they do boys because Districts give boys the right and opportunity to use the high school football fields, stadiums, facilities, but do not provide girls the same treatment and benefits.  Similarly, high schools in the Districts provide significant publicity to boys football teams but do not provide similar publicity to girls football teams since they do not offer girls football.

149.    Plaintiffs will be irreparably harmed if Districts continue to refuse to offer girls football teams because Plaintiffs' enrollment in high school is limited in time so they will lose their opportunity to play if injunctive relief is not granted.  There is no adequate remedy at law for this harm.

150.    The continuing harm caused by Districts' sex discrimination far outweighs any possible harm caused to Districts if injunctive relief is granted.

151.    Plaintiffs will lose out on the lifetime benefits from participation in sports if injunctive relief is not granted and monetary damages are not adequate to compensate Plaintiffs for the harm.

152.    Injunctive relief will promote the public's interest in ending sex discrimination in public schools.

153.    As a result of Districts' discriminatory actions, Plaintiffs have been denied their civil right to use the football fields, stadium, and facilities on a girls football team and the accompanying educational, physical, psychological, and academic benefits of participating in athletics. Plaintiffs have incurred and will imminently incur compensatory damages for Districts' violation of Title IX, including lost opportunity, emotional distress, humiliation, and denial of equal opportunity because of sex.

154.    Plaintiffs are entitled to expedited preliminary injunctive relief and permanent

injunctive relief in the form of an order requiring Districts to offer girls football at the high schools in the Districts for Districts' violation of Title IX's requirement to provide equal treatment and benefits to girls.

155.    A present and actual controversy exists between Plaintiffs and Districts concerning their rights and respective duties.  Plaintiffs allege that Districts have violated their rights and the rights of those similarly situated, under federal anti-discrimination laws.  Declaratory relief is necessary and appropriate.

156.    Plaintiffs have been required to retain legal counsel and are entitled to recover attorney fees and expenses from Districts under 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION

### (Equal Protection Clause as Enforced by 42 USC § 1983)

### (Brought Against UHSAA and individual District Defendants)

157.    Plaintiffs reallege and incorporate by reference each of the foregoing allegations.

158.    UHSAA and individual District Defendants have violated Plaintiffs' rights under the United States Constitution.

159.    Plaintiffs bring this claim individually and as a class action as set forth in the Class Allegations.

160.    Plaintiffs are United States citizens or otherwise have standing to bring an equal protection claim because they suffered an injury directly traceable to UHSAA and individual District Defendants' conduct.

161.    The Equal Protection Clause confers a federal constitutional right to be free from sex discrimination and prohibits state actors from discriminating on the basis of sex.

162.    Under 42 U.S.C. § 1983, UHSAA and individual District Defendants may be held

liable for violating Plaintiffs' constitutional rights secured by the Fourteenth Amendment.

163.    Defendants are state actors.

164.    By failing to provide female student athletes with the same treatment and benefits as male student athletes, by failing to provide equal athletic participation opportunities for female students, and by failing to offer girls football teams, UHSAA and individual District Defendants have purposefully discriminated against female students, including Plaintiffs, on the basis of their sex, and have intentionally deprived Plaintiffs of their constitutionally secured right to equal protection secured by the Fourteenth Amendment of the United States Constitution.

165.    Given its history of non-compliance with Title IX and knowledge of providing thousands fewer athletic opportunities to females than males for over 40 years, UHSAA and individual District Defendants have failed to provide equal athletic participation opportunities to the Districts' female student athletes.  Therefore, their actions constitute an intentional and/or knowing disregard for Plaintiffs' constitutional rights protected by the Fourteenth Amendment.

166.    When UHSAA and individual District Defendants denied Districts' female athletes equal participation opportunities, they did so acting as state actors and under color of law for purposes of 42 U.S.C. § 1983.

167.    Due to differences in the sexes, Defendants violate the Equal Protection Clause by failing to provide separate football teams for girls.

168.    Football is the country's most popular sport.

169.    Football is the sport with the greatest participation by boys in high school athletics, including boys who attend Jordan School District High Schools, Granite School District High Schools, and Canyons School District High Schools.

170.    Girls are not given the same opportunity to play football if they are forced to play

on boys' teams and compete against their bigger, stronger, and faster male classmates.

171.    The foregoing conduct by UHSAA and individual District Defendants constitutes a violation of the Fourteenth Amendment to the United States Constitution, as enforced by 42 U.S.C. § 1983.

172.    Plaintiffs will be irreparably harmed if UHSAA and individual District Defendants continue to refuse to offer girls football teams because Plaintiffs' enrollment in high school is limited in time so they will lose their opportunity to play if injunctive relief is not granted.  There is no adequate remedy at law for this harm.

173.    The continuing harm caused by UHSAA and individual District Defendants' sex discrimination far outweighs any possible harm caused to Districts if injunctive relief is granted.

174.    Plaintiffs will lose out on the lifetime benefits from participation in sports if injunctive relief is not granted and monetary damages are not adequate to compensate Plaintiffs for the harm.

175.    Injunctive relief will promote the public's interest in ending sex discrimination in public schools.

176.    As a direct and proximate result of conduct by UHSAA and individual District Defendants, Plaintiffs have been denied their civil right to participate on a girls football team and the accompanying educational, physical, psychological, and academic benefits of participating in athletics. Plaintiffs have incurred and will imminently incur compensatory damages for UHSAA and individual District Defendants' violation of their civil rights, including lost opportunity, emotional distress, humiliation, and denial of equal opportunity because of sex.

177.    Plaintiffs are entitled to expedited preliminary injunctive relief and permanent injunctive relief in the form of an order requiring Districts to offer girls football at the high schools

in the Districts for UHSAA and individual District Defendants violation of the United States Constitution's requirement to provide equal participation opportunities to girls.

178.    A present and actual controversy exists between Plaintiffs and UHSAA and individual District Defendants concerning their rights and respective duties.  Plaintiffs allege that UHSAA and individual District Defendants have violated their rights and the rights of those similarly situated, under the United States Constitution.  Declaratory relief is necessary and appropriate.

179.    Plaintiffs have been required to retain legal counsel and are entitled to recover attorney fees and expenses from UHSAA and individual District Defendants under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

1. Certify the first cause of action as a class action on behalf of all present, prospective, and future female students who attend or will attend one of the high schools in the Districts who seek to participate in girls football;

2. Certify the second cause of action as a class action on behalf of all present, prospective, and future female students who attend or will attend one of the high schools in the Districts who seek to participate in athletics;

3. Certify the third cause of action as a class action on behalf of all present, prospective, and future female students who attend or will attend one of the high schools in the Districts who seek to participate in girls football;

4. Certify the fourth cause of action as a class action on behalf of all present, prospective, and future female students who attend or will attend one of the high schools in the Districts

who seek to participate in girls football;

5. Issue a preliminary and permanent injunction ordering Districts and UHSAA to offer girls high school football teams;

6. Issue a preliminary and permanent injunction restraining Districts from continuing to discriminate against female students by failing to provide them with equal athletic participation opportunities;

7. Maintain jurisdiction over this matter to monitor Defendants' compliance with court orders;

8. Award Plaintiffs compensatory damages and monetary relief as permitted by law;

9. Award Plaintiffs their reasonable attorney fees and expenses; and

10. Order other such relief as the court deems appropriate.

**PLAINTIFFS DEMAND A JURY TRIAL AS TO ALL ISSUE TRIABLE BY JURY**

Dated this 23rd day of June 2017.

SMITH CORRELL, LLP

/s/ D. Loren Washburn
D. Loren Washburn
*Attorneys for Plaintiffs*

36