Mark L. Smith (Utah Bar #11367)
Michelle Correll (California Bar # 229488)
D. Loren Washburn (Utah Bar #10993)
Jacob L. Fonnesbeck (Utah Bar #14176)
SMITH CORRELL, LLP
8 E. Broadway, Suite 320
Salt Lake City, Utah 84111
Phone: (801) 584-1800
Fax: (801) 584-1820
lwashburn@smithcorrell.com
jfonnesbeck@smithcorrell.com

Brent Gordon (Utah Bar # 8794)
477 Shoup Ave, 101
Idaho Falls, ID 83402
Phone: (208) 552-0467
Fax: (866) 886-3419
brent@brentgordonlaw.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| S.G., by and through her general guardian, BRENT GORDON; et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>JORDAN SCHOOL DISTRICT, et al.,<br><br>    Defendants. | **PLAINTIFFS' OPPOSITION TO MOTION TO RECONSIDER FILED BY JORDAN SCHOOL DISTRICT, GRANITE SCHOOL DISTRICT, CANYON SCHOOL DISTRICT, PATRICE JOHNSON, MARTIN BATES, AND JAMES BRISCOE**<br><br>Case No. 2:17-cv-00677-RJS<br><br>Magistrate Judge Dustin B. Pead<br><br>Judge Robert J. Shelby |

## INTRODUCTION

This Court granted partial summary judgment in Plaintiffs' favor. The Defendant School Districts (the "Districts") now ask that the decision be reconsidered. The arguments in the Districts' Motion for Reconsideration (the "Districts' Motion") (dkt. 66) affect only the smallest

subslice of the Court's rationale in granting partial summary judgment. This Court, quite simply, ruled that a) the Districts suffered from a "substantial disparity" in male v. female sports participation rates (the Districts actually conceded this disparity), and b) that the Districts had no history or continuing practice of expanding their sports programs to meet female athletic needs (the Districts' dismal record on girls sports allowed no other conclusion).

A small factor on the second issue was the Districts' expected introduction of lacrosse for both boys and girls: the Plaintiffs had pointed out that lacrosse was coming but noted that there was no evidence that this sport's introduction was motivated by a desire to meet the needs of female athletes. The Districts, in fact, furnished no evidence that they were so motivated, and this Court properly observed at the hearing that the Districts had missed their opportunity to place evidence of proper motive in the record.  *See* Hearing Tr. (dkt. 54) 40-47, Feb. 13, 2018.

Now the Districts are back, arguing both that this Court's grant of partial summary judgment could be invalidated by evidence of motive as regards to the introduction of lacrosse, and that they should be given the chance to provide such evidence. But on the first point, this Court's ruling that the Districts have no "history or continuing practice" of expanding girls sports rested on a review of their last thirty years of introducing—or rather, failing to introduce—such sports. The Districts do not explain, or even attempt to explain, how such a ruling can be disturbed by a reevaluation of the motive for introducing a single sport (lacrosse) which has yet to be offered. And, since lacrosse will be offered to both boys and girls, there is no reason to believe that it will reduce the admitted disparity between male and female participation rates, nor do the Districts claim that it will. Hence, evidence that the Districts had a proper motive for introducing lacrosse, with nothing more, cannot justify the reversing this Court's prior ruling.

But all of the foregoing assumes that the Districts **have** evidence of motive despite their continued inability to submit such evidence to this Court. This should not be hard: evidence of the Districts' motives for introducing lacrosse should be very much within the Districts' possession, and emails memos, or other documents showing that lacrosse was implemented in response to female requests should be attached to the Districts' Motion (along with an

explanation for why these documents were not submitted in the original briefing on partial summary judgment). But no such documents have been submitted, or proffered, or even described. Rather, the Districts vaguely state that discovery "will likely produce facts and information relevant to the second prong," without saying what those "facts" or "information" might actually be. *See* Districts' Motion at 10. As a parting thought, the Districts propose, "in the alternative," to submit a conclusory, self-serving declaration to the effect that "lacrosse is being added in response to the expressed interest of female students." *Id.* at 11. This is far too little, and far too late: again, if there were concrete evidence of the motive for introducing lacrosse, that evidence should have been submitted long ago.

In short, the Districts have not shown how evidence of a motive for the introduction of lacrosse would warrant reconsideration of this Court's prior ruling, they have not introduced such evidence, and they have not even described the existence of such evidence (which, if it exists, must be in their possession). For these reasons, and as set forth in more detail below, the Districts' Motion for Reconsideration should be denied.

## PROCEDURAL BACKGROUND

**Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs moved for partial summary judgment against the Districts on one of their three Title IX causes of action – the Equal Accommodation test. This Court entered partial summary judgment for plaintiffs on the first two prongs of the Equal Accommodation test: (1) that Districts do not provide substantially proportionate participation opportunities to female students and (2) the Districts cannot show both (i) a history of program expansion or (ii) a continuing practice of program expansion which are demonstrably responsive to female students' developing interests and abilities. *See Mansourian v. Regents of the Univ. of Cal.*, 602 F.3d 957, 969 (9th Cir. 2010) (noting that history and continuing practice constitute two separate inquiries). In discussing the Districts' history of program expansion (or lack thereof), the Plaintiffs mentioned the possible introduction of lacrosse by the Districts in the next few years, but pointed out the lack of any evidence that this was motivated by a desire to respond to female athletic needs. *See* Plaintiffs' Motion for Partial Summary Judgment (dkt. 14) at 8, n. 4.

Nor did the Districts provide such evidence, as they did not file any affidavits to demonstrate that their high schools have both a history and a continuing practice of program expansion which is demonstrably responsive to the developing interests and abilities of their female students. Instead, the Districts relied on the affidavit of Rob Cuff ("Cuff"), the Executive Director of Defendant Utah High School Activities Association ("UHSAA"). *See* Joint Memorandum in Opposition (dkt. 35) at Exhibit A ("Cuff Aff.").

With regard to the Districts' **history** of program expansion, Cuff's affidavit said nothing at all about whether any of the Districts added any new girls sports or whether any new girls sports sanctioned by the UHSAA were added in response to female students' interests. In the words of this Court, "[i]n response to the plaintiff's motion for summary judgment, the UHSAA, which is not a defendant against whom the Title IX claims are asserted, submitted a declaration of Mr. Cuff. And that declaration speaks in no detail at all about any offerings by the defendant school districts." Hearing Tr. (dkt. 54) p. 78, Feb. 13 2018.

The following is a summary of Cuff's affidavit:

Paragraph 3 addressed female participants statewide since 2006.

Paragraph 4 listed sports sanctioned by the UHSAA and the year play began or will begin.

Paragraph 5 stated that girls golf was added in 2007.

Paragraph 6 stated that girls lacrosse would **begin in the 2019-20 school year**.

Paragraph 7 stated that in 2012 coed unified track and soccer were added.

Paragraph 8 stated that the UHSAA developed rules of eligibility.

Paragraph 9 stated that the UHSAA collects data on student participation.

Paragraph 10 stated state playoff tournaments are provided equally to boys and girls.

Paragraph 11 stated, vaguely, that lacrosse was added in response to interest and requests by students and parents.

Paragraph 12 stated that the UHSAA has a process to add sanctioned sports.

There was no evidence as to whether the Districts added any sports or why they had added any sports, including lacrosse now or golf in 2007, and the "why" is an element of proving compliance with the second prong. "[T]he focus is on whether the program expansion was responsive to developing interest and abilities of the underrepresented sex." 1996 Clarification. The Ninth Circuit explained that the school could only satisfy part two if it showed that the addition of a girls team was "demonstrably responsive to women's developing interests and abilities." *Mansourian v. Regents of the Univ. of Cal.*, 602 F.3d 957, 972 (9th Cir. 2010). This Court noted that "there's no evidence that when the school districts added girls golf by splitting the coed team 10 years ago that they did that as a result of any interest or ability demonstrated or expressed by females." *See* Hearing Tr. (dkt. 54) 83, Feb. 13, 2018.

And even if the Districts could show that girls golf was added due to the developing interests of girls, a single step in nearly 30 years is insufficient as a matter of law to demonstrate a history of program expansion. "Option two requires more than a single step. It requires evidence of continuous progress." *Mansourian v. Regents of the Univ. of Cal.*, 602 F.3d 957, 973 (9th Cir. 2010). The Ninth Circuit also described this prong as requiring "a steady march forward

that an institute must show to demonstrate Title IX compliance." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 857 (9th Cir. 2014). One new sport in nearly 30 years is not a steady march.

Although this Court could have ended its inquiry with the Districts' failure to demonstrate a history of program expansion that was demonstrably responsive to girls' developing interests and abilities, it also found a failure to show a ***continuing*** practice of program expansion. The 1996 Clarification notes that the following factors are evidence that may indicate a continuing practice of program expansion that is demonstrably responsive to the developing interests and abilities of the underrepresented sex:

> An institution's current implementation of a nondiscriminatory policy or procedure for requesting the addition of sports (including the elevation of club or intramural teams) and the effective communication of the policy or procedure to students; and

> An institution's current implementation of a plan of program expansion that is responsive to developing interest and abilities.

> OCR would also find persuasive an institution's efforts to monitor developing interests and abilities of the underrepresented sex, for example, by conducting periodic nondiscriminatory assessments of developing interests and abilities and taking timely actions in response to the results.

In response to Plaintiffs' motion for partial summary judgment, the Districts did not address the 1996 Clarification factors.

> If we go to the opposition memorandum submitted by the defendants . . . [the Districts make] one page [of argument] on the continuing practice of program expansion without citation to a single fact in evidence, the argument is essentially three paragraphs long on both of those points and devoid of any treatment, argument, explanation or evidence in support of the 1996 clarification factors of those assessed by the courts.

Hearing Tr. (dkt. 54) 85-86, Feb. 13, 2018.

The Districts' failure on this part is important because even if girls lacrosse is going to be added to the Districts' sports programs at some future date, the addition was not made as part of the Districts' procedure for allowing girls to request the addition of sports, the Districts'

3

implementation of a plan of expansion, or the Districts' assessments of developing interests of its female students and its "timely actions in response to the results." It is undisputed that the Districts have not adopted a procedure to add sports, implemented a plan for expansion, or made an assessment of their female students' interests and timely acted in response to that assessment.

All that the Districts said in briefing partial summary judgment was that they relied on the UHSAA's procedure to sanction sports. Even if that were true, UHSAA admitted that its procedure must be initiated by "a recognized organization creating a proposal." Cuff Aff. ¶ 12. Girls' interests or abilities play no part in UHSAA's process.

**First Amended Complaint**

Plaintiffs alleged that the UHSAA "is a state actor subject to the Fourteenth Amendment's Equal Protection Clause, as enforced through 42 U.S.C. § 1983." Complaint (dkt. 2), at ¶ 34. UHSAA "[a]dmits that by operation of statutes enacted in 2017, UHSAA may currently be deemed to be a 'state actor.'" UHSAA Answer (dkt. 23) at ¶ 10.

Shortly prior to the February Hearing, Plaintiffs filed a motion to amend their complaint to add a party. The unopposed motion was granted, but when the UHSAA filed an Answer to the Amended Complaint, it had changed its admission that it was a state actor to a denial.

**Second Amended Complaint**

Plaintiffs filed a motion to certify the case as a class action but then withdrew the motion when this Court raised concerns that the class definition was too **broad**. Plaintiffs filed a motion to amend the complaint to **narrow** the definition of the class and added allegations related to whether UHSAA was a state actor – namely the passage of legislation governing the UHSAA's organization structure and activities that went into effect after Plaintiffs' complaint was filed.

## THE DISTRICTS' FACTUAL ERRORS

The Districts' Motion is based on several factual errors.  The first factual error is their assertion that Plaintiffs filed an amended complaint to "expand the proposed class" when the opposite is true: the amended complaint seeks to narrow the proposed class.

The second factual error is the Districts' assertion that Plaintiffs allege that girls lacrosse will be added in 2018. Plaintiffs have not made any allegation as to when girls lacrosse will be played by any school—obviously this is within the knowledge of the Districts, and not the Plaintiffs.  The Districts cite paragraph 147 of Plaintiffs' amended complaint which says, "The UHSAA has recently decided to sanction lacrosse for boys and girls for **an** upcoming school year." Even Cuff's affidavit states that lacrosse is sanctioned for the 2019-2020 school year.

The third factual error is that the Districts assert that the proposed amended complaint alleges that "UHSAA dictates the sports programs offered by public high schools, UHSAA sanctioned lacrosse, and thus the Districts will be offering lacrosse." Plaintiffs have no idea if the high schools in the Districts will offer lacrosse and have not made such an allegation. In fact, the *Deseret News* quoted UHSAA Board Member, Amber Shill, as saying "We decided that no school has to participate. It will be a school decision." https://www.deseretnews.com/article/865679280/Its-official-Lacrosse-is-the-11th-sport-sanctioned-by-UHSAA-for-both-boys-and-girls.html

Plaintiffs agree that high schools do not offer sports other than those that are sanctioned by the UHSSA, so the sports that a school might offer are dictated by the UHSAA. But just because the UHSAA sanctions a sport does not mean that a high school must offer that sport.

The fourth factual error is the Districts' assertion that Plaintiffs intend to use the representations made by the UHSAA and the Districts at the hearing against the Districts. Plaintiffs made the allegation that the Districts have delegated certain duties to the UHSAA to

demonstrate the entwinement between the UHSAA and the state to support a finding that the UHSAA is a state actor. These allegations are not applicable to any causes of action brought against the Districts or superintendents.

## LEGAL ARGUMENT

The Districts argue that this Court should reconsider its order granting partial summary judgment and list five supporting arguments but none are relevant to a determination of whether a court should revise an order.

> Courts have generally permitted a modification of the law of the case when ***substantially different, new evidence has been introduced, subsequent, contradictory controlling authority exists, or the original order is clearly erroneous***.

*Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981) (emphasis added).  None of these factors apply here.

A motion for reconsideration is an "inappropriate vehicle to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion."  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

For example, in a case cited by the Districts, the court cited the foregoing standard and declined a party's invitation to revise an order when the party "***restates his previous arguments and asserts new arguments that were available to him at the time of the original briefing on this issues.  These do not provide grounds for a motion to reconsider***."  *Hogan v. Utah Telcom. Open Infrastructure Agency*, 857 F. Supp. 2d 1185, 1189 (D. Utah 2012) (emphasis added).

The Districts do not argue that there is new evidence that was previously unavailable, intervening change in controlling law, or the need to correct clear error.  Accordingly, this Court should deny the Districts' motion to reconsider.

While the arguments advanced by the Districts to support their motion are irrelevant to the legal grounds for seeking a revision, Plaintiffs will nonetheless address those arguments.

First, the Districts argue that since the Court allowed Plaintiffs to withdraw their motion to certify the case as a class action the Districts should be allowed to present untimely affidavits in opposition to Plaintiffs' motion for summary judgment. "Since Plaintiffs have been given the chance to start over, Districts Defendants should be afforded similar consideration." Districts' Motion, 8. The Districts' argument is not persuasive because different rules of procedure apply to a motion to amend and a motion for summary judgment.

Rule 15 allows a party to amend its complaint and provides that a court should freely give leave. Plaintiffs are complying with Rule 15 by filing a motion for leave to amend.

Rule 56 governs motions for summary judgment and provides that a court may allow a non-movant additional time to obtain affidavits or take discovery when the non-movant shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition. *See* Fed. R. Civ. P. 56(d). The Districts did not submit an affidavit specifying the reasons that they could not present facts in opposition of Plaintiffs' motion for summary judgment.

Indeed, as this Court said at the hearing in February: "Nobody said, we need more discovery. Nobody said don't rule on this until other issues are in front of the Court. You answered the motion. You opposed it. You submitted evidence. So I'm reviewing the evidence that you submitted and I'm looking to determine whether it creates a genuine issue of material fact." Hearing Tr. (dkt. 54) p. 47, Feb. 13 2018. Counsel for the Districts acknowledged during the hearing that no information was presented about the Districts: "I didn't provide information specific to the districts." *Id.* at 20.

Second, the Districts argue that Plaintiffs' proposed second amended complaint "defines a new, broader class." Districts' Motion, 8. The opposite is true. This Court was concerned that Plaintiffs' class was too broad; Plaintiffs' second amended complaint presents a narrower class.

Third, the Districts argue that this Court failed to make a reasonable inference based on Rob Cuff's affidavit "that the Districts are offering girls lacrosse starting fall 2018 in response to the express interests of female students," but the Court could not infer something that Cuff never said. Cuff's affidavit states that lacrosse play will begin in Utah in the 2019-2020 school year.

*See* Cuff Aff. ¶ 5.  Also, Cuff's affidavit does not state that any high schools in the Districts will be offering girls lacrosse at that time (or at any other time).  And finally, Cuff's affidavit states that the addition of boys and girls lacrosse was in response to requests by students and parents to their local high schools.  *See* Cuff Aff. ¶ 11.  Cuff never said that lacrosse was introduced in specific response to the requests of girls (or girls' parents)—nor is there any other evidence for that proposition—and this Court cannot find facts that are not there.  Indeed, the Court made exactly this point in the February hearing ("Doesn't your argument require me to construe Paragraph 11 in the [Cuff] declaration and read into it something that's not stated?").  Hearing Tr. (dkt. 54) p. 43, Feb. 13 2018.

Furthermore, since both boys and girls lacrosse teams were added, there is no way to infer from Cuff's affidavit that the students referred to by Cuff as being expected to play lacrosse are (or will be) female students. And, since 146 high schools are members of the UHSAA, there is no way to infer that any of the students he refers to in his affidavit are students who attend any of the high schools within the Districts.

Fourth, the Districts argue that discovery "will likely produce facts and information relevant to the second prong."  Districts' Motion, 10. The Districts do not explain what discovery they would conduct that would yield information about their efforts to expand their sports programs to meet the developing interests and abilities of their female students. That information would be in the Districts' control, and would have been produced by now if it existed.

Finally, the Districts argue that this Court should reconsider its decision because the ruling against the Districts "could be used against other education institutions in future litigation." Opp. 10. The Tenth Circuit has held that issue preclusion only applies when "the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication." *Park Lake Res. Ltd. Liab. Co. v. USDA*, 378 F.3d 1132 (10th Cir. 2004).  Other school districts in the state would not be subject to the doctrine of issue preclusion because they are not parties to this lawsuit.

8

The Districts also seek leave to add a declaration to the record.  The motion is and was untimely.  "In the Tenth Circuit, a non-movant requesting additional discovery under Rule 56(d) must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016).  The facts that the Districts want to add in the proposed declaration were always available to the Districts.  After Plaintiffs pointed out in their reply brief the deficiencies in Cuff's Affidavit,

> the defendants made no Rule 56(d) motion, no request for leave to file a surreply to address these deficiencies, no motion or request to modify the record or supplement the record in any way. . . . The defendants were also aware of the issue with the failure of proof as to the districts when they submitted evidence at a statewide level by the association.  This was something that garnered considerable attention by the plaintiffs in their reply memorandum. So it's no surprise to anyone and it was just merely not addressed by the defendants.

Hearing Tr. (dkt. 54) pp. 87-88, Feb. 13 2018.

The Districts also erroneously state that the declaration would simply restate allegations that the Plaintiffs have included in their proposed amended complaint.  This statement is not true. The Districts indicate that the declaration would state, "the Districts offer sports sanctioned by UHSAA."  Districts' Motion, 11.  Plaintiffs never alleged that the Districts offer *all* sports sanctioned by the UHSAA and have consistently argued against this point.  Brent Gordon's affidavit referred to the UHSAA participation survey that showed that not every UHSAA member offers all sanctioned sports.  *See* (dkt. 14) Gordon Aff. Exhibit D.

The Districts also indicate that the declaration would state, "the UHSAA process for adding new sports is one way the Districts respond to students' developing interests."  Districts' Motion, 11.  Plaintiffs never alleged that the UHSAA process is a way that the Districts respond to students' developing interests.  In fact, the UHSAA process does not involve female students but instead is initiated by a "recognized organization."  Cuff Aff. ¶ 12.

The Districts indicate that the declaration would state, "the Districts will add girls lacrosse in fall 2018."   Plaintiffs have never made any such allegation.   Further, the statement is contradicted by the Cuff Affidavit that states that lacrosse is not sanctioned until the 2019-2020 academic year.

And most importantly, the Districts indicate that the declaration would state (in conclusory manner) that "lacrosse is being added in response to the expressed interest of female students." Plaintiffs have certainly not alleged that, and in fact have argued that lacrosse was added because the University of Utah elevated lacrosse to a varsity sport.   Regardless, the statement is unhelpful because it does not state that any of the female students it refers to are students who attend any of the high schools within the Districts.

## CONCLUSION

For the reasons given, the Plaintiffs respectfully ask this Court to deny the Districts' Motion.

Dated June 3, 2018.

_____/s/ Brent Gordon_____
Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2018, a true and correct copy of the foregoing

**PLAINTIFFS' OPPOSITION MOTION TO CERTIFY CLASS** was served on the following

persons via the Court's electronic filing system:

Darin B. Goff
Rachel G. Terry
UTAH ATTORNEY GENERAL'S OFFICE
160 E. 300 S. 6th Floor
P.O. Box 140856
Phone: (801) 366-0100
dgoff@agutah.gov
rachelterry@agutah.gov

*Attorneys for Defendants Canyon School District, Granite School District, Jordan School
District, James Briscoe, Martin Bates, and Patrice Johnson*

Mark O. Van Wagoner
SAVAGE YEATES & WALDRON PC
170 S. Main Street, #500
Salt Lake City, Utah 84101
Phone: (801) 328-2200
movw@comcast.net

D. Craig Parry
PARR BROWN GEE & LOVELESS
101 South 200 East, Ste 700
Salt Lake City, UT 84111
Phone: (801) 532-7840
cparry@parrbrown.com
*Attorneys for Defendant, UHSAA*


/s/ Brent Gordon