THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| S.G., by and through her general guardian, BRENT GORDON, et al.,<br><br>　　　　　　　　Plaintiffs,<br>v.<br><br>JORDAN SCHOOL DISTRICT, et al.,<br><br>　　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION TO CERTIFY CLASS**<br><br>Case No. 2:17-CV-00677<br><br>Judge Robert J. Shelby |

　　　　This case involves a group of female students who want more athletic opportunities, including a girls' football team, at their high schools. Plaintiffs originally sought to certify a class of all present and future female high school students, including those who seek to participate "in girls-only football teams, or in other sports or teams not offered at the Districts' high schools."[1] Plaintiffs' counsel made an oral motion to withdraw the Motion to Certify during a hearing on February 13, 2018.[2] The court granted the oral motion to withdraw and allowed Plaintiffs an opportunity to amend their Complaint. Plaintiffs amended their Complaint, and now seek to certify a class of female students seeking more athletic opportunities and a subclass of female students seeking a girls' football team. For the reasons stated below, the Motion to Certify Class is granted in part and denied in part.[3]

## BACKGROUND

　　　　Plaintiffs are seven minor female students, by and through their guardians, who attend or will attend high schools in Jordan, Granite, or Canyons school districts. The lead Plaintiff, S.G.,

---

[1] Dkt. 33 at i–ii.

[2] Dkt. 44.

[3] Dkt. 67.

helped start a recreational girls-only tackle football league in 2015.[4]  The recreational league started with 50 participants but quickly grew to approximately 200 by spring 2017.[5]  Plaintiffs allege the majority of girls who play in the recreational league "reside within the Districts' boundaries and either attend or will attend high school at one of the Districts' high schools."[6]

Plaintiffs allege female students in the Districts also want more athletic opportunities in general.  Based on public records requests, Plaintiffs allege high schools in the Districts "provided an average of 2,260 more participation opportunities to boys than girls" for each of the three years before they filed this action.[7]

Plaintiffs sued the Districts and their superintendents (collectively, the Districts), together with the Utah High School Activities Association, alleging three violations of Title IX and one violation of the Equal Protection Clause.

Based on the allegations in their Second Amended Complaint,[8] Plaintiffs now seek to certify two classes:  (1) a "female athletes" class of "[a]ll present and future Jordan, Canyon, and Granite school district female high school students who seek to participate and/or are or were deterred from participating in athletics," and (2) a "football subclass" of "[a]ll present and future Jordan, Canyon, and Granite school district female high school students who seek to participate and/or are or were deterred from participating on girls high school football teams."[9]  Plaintiffs

---

[4] Dkt. 76, ¶ 202.

[5] *Id.* ¶ 203.

[6] *Id.* ¶ 204.

[7] *Id.* ¶ 49.

[8] Plaintiffs' First Amended Complaint added another female student as a plaintiff but did not otherwise alter the original allegations.

[9] Dkt. 67, at 2.

seek to certify both the female athletes class and the football subclass for their Title IX equal accommodation claim, and to certify only the football subclass for their Title IX contact sports claim, Title IX equal treatment claim, and Equal Protection Clause claim.[10]

**ANALYSIS**

Class certification is appropriate only if the moving party satisfies the four requirements of Federal Rule of Civil Procedure 23(a) and one of the requirements of Rule 23(b).[11]

### I. Rule 23(a) requirements

Under Rule 23(a), class certification is appropriate only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."[12] The party seeking class certification must "affirmatively demonstrate" compliance with Rule 23(a) by proving "that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."[13] The district court "has an independent obligation to conduct a rigorous analysis before concluding that Rule 23's requirements have been satisfied."[14]

#### A. Adequacy

The court begins the Rule 23 analysis with adequacy because it will determine how each class proceeds. The adequacy requirement has two components: (1) "the proposed class

---

[10] Dkt. 76 at 46–47; Dkt. 67 at 2–3.

[11] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).

[12] Fed. R. Civ. P. 23(a).

[13] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

[14] *Wallace B. Roderick Revocable Living Tr. v. XTO Energy*, 725 F.3d 1213, 1217 (10th Cir. 2013) (internal quotation marks omitted).

3

representative must have an interest in vigorously pursuing the claims of the class," and (2) the representative "must not have interests antagonistic to the interests of other class members."[15]

Defendants ask the court to deny certification based on a failure of the second component because the class and subclass seek conflicting remedies. As Defendants note, "If the Districts implemented girls football today, it is unclear whether the named Plaintiffs would continue to represent the Female Athlete Class at all."[16] The court agrees that the remedies the class and subclass seek could conflict with each other in a way that would render their representation inadequate.[17]

In their Reply in support of the Motion to Certify, Plaintiffs ask the court to redefine the classes or certify only a football class if the court finds a failure with one of the proposed classes.[18] Where a proposed class has potential conflicts between members, the court may instead certify two separate subclasses.[19] Each subclass is then treated as its own class, "meaning it has its own independent class representative who is a member of that subclass and its own independent counsel."[20] Splitting the female athletes class and football subclass into two separate classes—each with its independent representative and counsel—would resolve the

---

[15] *Certification of subclasses under Rule 23(c)(5)*, 1 McLaughlin on Class Actions § 4:45 (14th ed.).

[16] Dkt. 86, at 7.

[17] Another district court faced with similar circumstances found "an inherent conflict" between a class that included students seeking a women's rowing team and a class of all participants in women's athletics. The conflict arose because "compliance could conceivably be achieved, in part, by taking away the allegedly paltry resources allocated to women's rowing, and bestowing them along with new resources on other women's varsity sports, a prospect to which the representatives would not likely be amenable." *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 290 (S.D. Ohio 2006).

[18] Dkt 91, at 10.

[19] *Boucher v. Syracuse Univ.*, 164 F.3d 113, 119 (2d Cir. 1999); *see also* 32B Am. Jur. 2d *Federal Courts* § 1718.

[20] *Conflict subclasses and their requirements*, 3 Newberg on Class Actions § 7:31 (5th ed.).

conflict presented. The court thus will split the classes and analyze whether each independently satisfies the remaining Rule 23(a) factors.[21]

### B. Numerosity

For each class, the moving party must show that "the class is so numerous that joinder of all members is impracticable."[22] This requires setting forth "ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement."[23] There is no "set formula" to determine whether a proposed class is so numerous that joinder of all members is impracticable. Instead, "[a] number of factors are relevant in determining whether joinder is impracticable, including the class size, the geographic diversity of class members, the relative ease or difficulty in identifying members of the class for joinder, the financial resources of class members, and the ability of class members to institute individual lawsuits."[24] In other words, whether joinder is impractical turns on the particular circumstances of the case. "The duty of establishing those particular circumstances rests with the party who asserts the existence of the class and that party must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved."[25]

---

[21] Although mindful of the arguments made by Defendants in their motion to file a joint supplemental memorandum in opposition to Plaintiffs' Motion to Certify Class (Dkt. 103), those arguments would not change the court's analysis concerning adequacy or numerosity. Accordingly, the Defendants' motion is DENIED.

[22] Fed. R. Civ. P. 23(a)(1).

[23] *Rex v. Owens ex rel. Oklahoma*, 585 F.2d 432, 436 (10th Cir. 1978).

[24] *Colorado Cross-Disability Coal. v. Taco Bell Corp.*, 184 F.R.D. 354, 357 (D. Colo. 1999); *see* Robert Newburg, Newberg on Class Actions § 3:11 (5th ed. 2018). Because the court ultimately finds that the Plaintiffs failed to provide the court with any evidence from which it could reasonably estimate the proposed size of the female athletes class, it is unnecessary to consider any factors beyond size for that class.

[25]*Rex.,* 585 F.2d at 436. The court acknowledges that the Tenth Circuit has favorably cited cases holding that where a suit seeks only injunctive relief, "even speculative and conclusory representations as to the size of the class are sufficient." *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275–76 (10th Cir. 1977); *see also Goodnight v. Shalala*, 837 F. Supp. 1564, 1582 (D. Utah 1993) (citing *Horn*). *But see DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) ("In deciding whether the proposed class meets these requirements, the district court must accept the substantive allegations of the complaint as true, though it need not

### 1. Female athletes numerosity

For the female athletes class, Plaintiffs allege the Districts provided an average of 2,260 more athletic participation opportunities to boys than girls each year, which they argue is evidence of how many girls were deterred from participating in athletic opportunities. Plaintiffs also argue it is difficult to identify how many other girls are interested in playing new sports, pointing to anecdotal evidence showing that the number of girls who joined high school golf teams when offered far exceeded schools' expectations. Finally, Plaintiffs seek to include future students and contend that because future class members are "necessarily unidentifiable," joinder is impracticable.

Defendants insist none of this provides an ascertainable number of class members. Defendants insist the smaller number of athletic opportunities for girls does not show numerosity because it does not prove how many girls were deterred by the lack of opportunities. Defendants also argue the evidence of how many girls participated in golf is irrelevant to the question of how many girls seek to participate in other sports.

The court concludes Plaintiffs have not met the numerosity requirement for the female athletes class. Plaintiffs have not produced any competent evidence or reasonable estimate of how many girls "seek to participate and/or are or were deterred from participating in athletics." The evidence about how many girls joined golf teams years ago does not provide persuasive evidence or a reasonable estimate of how many girls are still deterred from participating in athletics. It may indeed be difficult to determine how many girls will join a team before that

---

blindly rely on conclusory allegations of the complaint which parrot Rule 23 and may consider the legal and factual issues presented by plaintiff's complaints.") (citation omitted) (internal quotation marks omitted). Absent clear guidance, the court declines to depart from the well-established rule that the party seeking certification must provide evidence from which a court can reasonably infer class size.

team is available; however, Plaintiffs did not even provide relatively accessible evidence, such as survey responses from students indicating that a given student would play a given sport, if offered by their District. And even if such survey evidence was somehow inaccessible, that would not change Plaintiffs' burden under Rule 23(a) "to prove that there are *in fact* sufficiently numerous parties."[26] Plaintiffs' arguments about golf serve only to show that the number of girls who express interest before a team exists may be much lower than the number of girls who end up participating. But Plaintiffs have not provided any evidence pointing to the first part of this conclusion—that a number of girls have expressed interest in more athletic opportunities in the Districts. Without such evidence, the court cannot conclude that Plaintiffs have established the number of girls who seek more athletic opportunities is so large that joinder is impracticable.[27]

The addition of future members in the proposed class also does not satisfy the numerosity prong because Plaintiffs have still provided no reasonable estimate or basis for the court to extrapolate how many future members of the class would actually seek to participate or are deterred from participating in athletics.

---

[26] *Dukes*, 564 U.S. at 350.

[27] Although it is true that courts have sometimes made inferential leaps to find that joinder was impracticable, Plaintiffs ask for an inferential leap that is both unprecedented and unsupported by evidence. Take for example, *Colorado Cross Disability Coalition v. Abercrombie & Fitch*, 765 F.3d 1205, 1215 (10th Cir. 2014). That case involved millions of Americans with disabilities; whereas, this case involves a few thousand students. Where there are millions of potential class members, it takes a short inferential leap to conclude that "the class is so numerous that joinder of all members is impracticable." If just 0.1 percent of 1 million potential class members are, in fact, class members, the class would consist of 1,000 members. But if 0.1 percent of 2,260 potential class members are members, the class would consist of no more than 3 members (excluding any named plaintiffs). Plaintiffs thus ask the court to make an inferential leap several magnitudes greater than that made in *Colorado Cross Disability Coalition*, and the court hesitates to make such a leap on the facts presented in this case*.* More fundamentally, Plaintiffs have provided no evidentiary basis from which a court could make *any* reasonable inferential leap. Unlike in *Colorado Cross Disability Coalition*, where Plaintiffs "submitted declarations from five of its members who averred that they shop at malls where Hollister stores are located," Plaintiffs here have not provided even a single student statement that they have been deterred from playing sports by lack of opportunity. *Id.* at 1215.

Plaintiffs have failed to show numerosity exists for the female athletes class. Because the class fails on this prong, it is not necessary to address commonality or typicality. The Motion for Class Certification for the female athletes class is denied.

### 2. Football class numerosity[28]

For the football class, Plaintiffs point to the fact that a recreational girls' football league has grown in recent years from 50 to more than 200 participants, representing a rapid upward trend in interest and participation. Plaintiffs argue even more girls would play for a high school team, which would provide opportunities for school support, awards and recognition, regional and state competitions, and school credit.[29] Defendants argue Plaintiffs have not shown that all the 200 participants on the recreational league will be eligible to play on a high school team and would choose football over other sports.

The court rejects Defendants' suggestion that it should require evidence that female students would choose to play football over other sports. The proposed class is for female students "who seek to participate and/or are or were deterred from participating on girls high school football teams." The court need not look into whether proposed class members would seek to play other sports to determine whether they seek to participate in football.

Nevertheless, the court is troubled by the paucity of evidence Plaintiffs have provided. The court notes that Plaintiffs could almost certainly acquire evidence demonstrating the interest and eligibility of the 200 recreational league participants because at least some of the Plaintiffs

---

[28] Plaintiffs conceded at oral argument that a girls football class was necessary because its members were distinct from the female athletes class. Specifically, the conceded distinction was that the girls football class's members would play high school girls football (if offered by the Districts) at the exclusion of any other sport. Because the court understands that the members of the girls football class do not seek more athletic opportunities in general but instead a girls football team, the court concludes that the members of the girls football class cannot count towards the female athletes' numerosity requirement.

[29] Dkt. 76, ¶ 206.

helped form the league and presumably know the identities of its participants. It seems Plaintiffs could easily have submitted questionnaires or surveys from the 200 participants regarding their interest and eligibility for playing on a high school team in the Districts.[30]

Such evidence would have been helpful in this case; without it, the court must infer that an unknown but substantial number of the recreational league participants desire to play on a high school team and are eligible to do so. And in another context, the court would hold Plaintiffs' evidentiary showing insufficient. However, in cases seeking only injunctive relief, Tenth Circuit law instructs that such evidence is not always necessary.[31]

Notably, the Tenth Circuit has drawn similar inferences as the ones Plaintiffs urge the court to draw here. For example, in *Colorado Cross Disability Coalition*, the defendant, which operated Hollister stores nationwide, argued that Colorado Cross Disability Coalition (CCDC), a group suing on behalf of disabled customers, had failed to meet the numerosity requirement because it had presented no evidence about the size of the proposed class.[32] In reviewing the evidence submitted before the district court, the Tenth Circuit noted there were nearly 250 Hollister stores with allegedly inaccessible porches in over 40 states, and five proposed class members stated in declarations that they shop at malls where Hollister stores are located.[33] That evidence, combined with the court's judicial notice of the fact that millions of Americans have

---

[30] *See Foltz v. Del. State Univ.*, 269 F.R.D. 419, 422 (D. Del. 2010) (noting that "questionnaires, letters, and emails from 54 prospective student athletes" were helpful when analyzing numerosity).

[31] *Horn*, 555 F.2d at 276 ("In summary then, where, as here, the class is composed of a substantial number, no great need is present to identify each and every one. Since injunctive relief is the main goal of the action, all of the requirements are satisfied, and the equities favor the plaintiff and the class he represents, it is inappropriate to become stymied by the concept of very large numbers . . . . Injunctive relief is no less proper or practical because the number is 41 or 46 rather than some other number.").

[32] 765 F.3d at 1215.

[33] *Id.*

disabilities, created a reasonable inference that "a substantial number of disabled people live in the 40 states where Hollister stores are located; that these people, like CCDC members and many Americans, shop at malls, including the 250 malls with porched Hollisters; and that joining all of these people in one suit would be impracticable."[34] Thus, the Tenth Circuit held, the district court had not abused its discretion in finding the plaintiffs satisfied the numerosity requirement.[35]

Other circuits have reached similar conclusions. For example, in *Pederson v. Louisiana State University*, the Fifth Circuit addressed numerosity for a class of college athletes.[36] In that case, the district court provisionally certified a class of "[t]hose who have sought or seek to participate in varsity intercollegiate athletics at LSU but who are or were not allowed such participation due to LSU's failure to field teams in said female varsity athletics."[37] The district court later concluded the plaintiffs had failed to satisfy the numerosity requirement and decertified the class.[38] On appeal, the Fifth Circuit held the district court abused its discretion in decertifying the class, stating that "[o]ur independent review of the record satisfies us that the numerosity prong has been satisfied."[39] The Fifth Circuit noted that even though only eight women attended varsity soccer tryouts, "well over 5,000 young women were playing soccer or fast-pitch softball at the high school level in Louisiana."[40] The Court also noted that former

---

[34] *Id.*

[35] *Id.*

[36] 213 F.3d 858 (5th Cir. 2000).

[37] *Id.* at 867.

[38] *Id.*

[39] *Id.* at 868.

[40] *Id.*

10

members of a Louisiana soccer club had received scholarships to play soccer at other colleges.[41] Although those women were not students at Louisiana State University and therefore could not be members of the class, the Court considered the evidence relevant to "the talent pool in Louisiana" and therefore appropriate to consider for class certification purposes.[42]

The inferences Plaintiffs urge the court to draw in this case (at least for the football class) are similar to those in *Colorado Cross Disability Coalition* and *Pederson*. Plaintiffs have presented evidence of 200 girls who play girls' football and will attend high schools in the Districts.[43] It is reasonable to infer that a substantial number of the girls who play in the recreational league will also want to play on a high school team. Additionally, even assuming some of the girls on the recreational league are ineligible to play on a high school team, common sense leads to the conclusion that the remaining athletes would constitute a number too great for joinder.[44] In this limited context, Plaintiffs have satisfied the numerosity requirement for the football class.

### C. Commonality

The party seeking class certification must also show "there are questions of law or fact common to the class."[45] This requires a demonstration that the proposed class members "have suffered the same injury" that is based on a "common contention," i.e., "that determination of its

---

[41] *Id.*

[42] *Id.*

[43] Unlike the lack of evidence about subjective mental state of the proposed female athletes class, Plaintiffs have presented an evidentiary basis from which the court can make reasonable inferences—i.e., inferences resting on evidence and not merely speculation—about the number of football class members.

[44] *See Rex*, 585 F.2d at 436 ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class.").

[45] Fed. R. Civ. P. 23(a)(2).

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[46]

Plaintiffs argue a common question of law and fact exists for three claims. For their Title IX equal accommodation claim, Plaintiffs assert the court must determine "whether the Districts' failure to provide substantially equal participation opportunities to girls 'is the result of girls' lack of interest in athletics.'"[47] Second, Plaintiffs contend the court is faced with a common question of law and fact for the Title IX contact sports claim—namely, whether "opportunities for girls have historically been limited and there is sufficient interest and ability among girls to sustain viable teams and reasonable expectation of competition for the teams."[48] Finally, Plaintiffs assert a common question of law exists for the Equal Protection Clause claim because the court must look to whether the Equal Protection Clause requires girls' football teams if schools offer boys' football teams.

The Title IX claims do not involve a common question that is capable of classwide resolution. First, to determine "whether the Districts' failure to provide substantially equal participation opportunities to girls 'is the result of girls' lack of interest in athletics,'" the court would need to look to whether female students in each of the three Defendant school districts lack interest in athletics. This is necessarily an individualized assessment, and the determination of its truth or falsity in each District will not necessarily resolve the issue for all proposed class members (drawn collectively from all three districts) in one stroke.

---

[46] *Dukes*, 564 U.S. at 349–50.

[47] Dkt. 67 at 7 (quoting *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 858 (9th Cir. 2014)).

[48] *Id.* at 8.

The second Title IX claim does not satisfy commonality for the same reason. The court cannot determine whether "there is sufficient interest and ability among girls to sustain viable teams and reasonable expectation of competition for the teams" without looking to facts specific to the schools within each District. If there is sufficient interest and ability among girls to sustain teams at some schools but not others, the court cannot resolve the issue in one stroke.

Thus, Plaintiffs have failed to show commonality for both Title IX claims.[49]

However, the Equal Protection claim presents a common question of law: whether the Defendants discriminate on the basis of sex by providing football teams for boys but not for girls. Unlike the school or district specific inquiries presented by Plaintiffs' Title IX claims, the Equal Protection claim presents a legal question common to all District Defendants, as it is stipulated that girls' football is offered in none of the districts while boys' football is offered in each. In light of this, a determination that the Defendants discriminate on the basis of sex would resolve a common question of law for the entire football class as to all District Defendants. Other factual issues may remain, but commonality does not require the resolution of all issues in one fell swoop. It requires only that the court's determination on a common question "will resolve an issue that is central to the validity of each one of the claims in one stroke."[50] The legal question presented by the Equal Protection claim satisfies this requirement.

Thus, the proposed football class satisfies the commonality requirement only as to the Equal Protection claim.

---

[49] Plaintiffs' Motion to Certify does not address commonality for their equal treatment claim under Title IX. In any case, the court concludes the class would lack commonality for that claim for the same reasons as the other Title IX claims.

[50] *Dukes*, 564 U.S. at 350.

### D. Typicality

Next, the class proponent must establish "the claims or defenses of the representative parties are typical of the claims or defenses of the class."[51] This requirement is satisfied if "all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[52]

Focusing on the proposed class and claim remaining, Plaintiffs argue their claims are typical of the claims of the whole football class because each girl attends a high school in a District that violates the Equal Protection Clause. Plaintiffs have shown they are subjected to the same practice—the Defendants' refusal to establish school-sponsored girls' football teams—as any other class member would be. For this reason, the court concludes Plaintiffs satisfy the typicality requirement.

### II. Rule 23(b)

Because Plaintiffs have met all four requirements for class certification of the football class under Rule 23(a), the court must also assess whether they satisfy one of the requirements of Rule 23(b). Plaintiffs argue they satisfy Rule 23(b)(2), which requires showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[53]

---

[51] Fed. R. Civ. P. 23(a)(3).

[52] *DG ex rel. Stricklin*, 594 F.3d at 1199.

[53] Fed. R. Civ. P. 23(b)(2).

The requirements of general applicability and appropriateness of injunctive relief for the class as a whole are "independent but related" parts.[54] Taken together, the two parts require "cohesiveness among class members with respect to their injuries."[55] To show cohesiveness, the party seeking certification must illustrate that classwide injunctive relief would "state its terms specifically and describe in reasonable detail . . . the act or acts restrained or required," and that "class members' injuries are sufficiently similar that they can be remedied in a single injunction without differentiating between class members."[56]

Plaintiffs persuasively contend they satisfy both requirements. They argue the Districts have refused to institute girls-only football as to the entire football class and injunctive relief for the class as a whole is appropriate.[57] Plaintiffs outline six possible injunctions, any of which would provide relief without differentiating between class members.[58] Therefore, Plaintiffs have met the requirements of Rule 23(b)(2).

Because Plaintiffs have satisfied the requirements of Rule 23(a) and Rule 23(b)(2), the court concludes that class certification is appropriate for the football class on the Equal Protection claim.

### III. Standing for Equal Protection claim

The Districts argue Plaintiffs lack standing for their Equal Protection claim because they are not members of a varsity team that has been discriminated against on the basis of sex. The Districts point to *Pederson v. Louisiana State University*, in which the Fifth Circuit held that

---

[54] *Shook v. Board of County Commissioners*, 543 F.3d 597, 604 (10th Cir. 2008).

[55] *Id.*

[56] *DG ex rel. Stricklin*, 594 F.3d at 1200 (alteration in original) (internal quotation marks omitted).

[57] Dkt. 76, ¶ 105.

[58] Dkt. 76 at 46.

plaintiffs who were not members of a varsity team did not have standing "to challenge the treatment of existing varsity athletes."[59] But Plaintiffs in this case do not seek relief on behalf of existing varsity athletes. They seek relief only on behalf of themselves and similarly situated female students on the ground that they have been discriminated against on the basis of sex. Plaintiffs have standing for their Equal Protection claim.

## IV. Conclusion

Plaintiffs' Motion to Certify Class is GRANTED in part and DENIED in part.[60] It is ORDERED that the following class shall be certified under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure:

> All present and future Jordan, Canyon, and Granite school district female high school students who seek to participate and/or are or were deterred from participating on girls high school football teams.

That class is certified with respect to all factual and legal issues relating to the Plaintiffs' Equal Protection Claim against Defendants.

Because Plaintiffs failed to provide the court an evidentiary basis from which to infer that Rule 23(a)'s numerosity requirement was satisfied with respect to the female athletes class, the court DENIES certification of that class.

Although mindful of the arguments made by Defendants in their motion to file a joint supplemental memorandum in opposition to Plaintiffs' Motion to Certify Class, those arguments would not change the court's analysis concerning adequacy or numerosity. Accordingly, the Defendants' Motion is DENIED.[61]

---

[59] 213 F.3d at 872.

[60] Dkt. 67.

[61] Dkt. 103.

After the benefit of the parties' briefing and careful consideration of the Rule 23(g) factors, the court hereby designates the following as class counsel: D. Loren Washburn, Mark Smith, and Jacob Fonnesbeck. The court declines to appoint Brent Gordon as counsel because he is likely to be a necessary witness. The class representatives shall be the named student plaintiffs: S.G., L.D., B.S., M.C., D.R., I.N., and I.C.

**SO ORDERED** this 9th day of October, 2018.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge