Mark L. Smith (Utah Bar #11367)
D. Loren Washburn (Utah Bar #10993)
Jacob L. Fonnesbeck (Utah Bar #14176)
SMITH WASHBURN, LLP
8 E. Broadway, Suite 320
Salt Lake City, Utah 84111
Phone: (801) 584-1800
Fax: (801) 584-1820
msmith@smithwashburn.com
lwashburn@smithwashburn.com
jfonnesbeck@smithwashburn.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| S.G., by and through her general guardian, BRENT GORDON; et al., | **PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES FROM CANYON, GRANITE, AND JORDAN SCHOOL DISTRICTS** |
| Plaintiffs, | |
| vs. | Case No. 2:17-cv-00677-RJS |
| JORDAN SCHOOL DISTRICT, et al., | Magistrate Judge Dustin B. Pead |
| Defendants. | Judge Robert J. Shelby |

Plaintiffs respectfully submit this Motion to Compel Discovery Responses from Canyon, Granite, and Jordan School Districts. This motion is based on the following Memorandum of Points and Authorities, the attachments provided herewith, the pleadings and other papers on file with the Court, and any oral argument the Court may entertain concerning this matter.

////

////

////

## TABLE OF CONTENTS

I.  Introduction ................................................................................................................. 1

II.  Statement of Facts ...................................................................................................... 4

III.  Governing Legal Standard ........................................................................................ 10

IV.  Argument .................................................................................................................. 12

    A.  The Districts Cannot Meet Their Burden to Show That the Objected-To Words Are Vague or Ambiguous. ............................................................................. 12

    B.  Many of the Requests for Admission That Jordan School District Refused to Admit Can Be Proven with Their Own Discovery Responses. ............................................ 15

    C.  Other Requests Are Proved by The Districts Responses and Information They Provided in Discovery. ................................................................................................... 17

    D.  There Are Enough Girls Who Played Football in Official School Activities This Year to Form Enough Football Teams to Have A Competitive League. ...................................... 19

V.  Relief Requested ....................................................................................................... 24

VI.  Conclusion ................................................................................................................ 25

## TABLE OF AUTHORITIES

### CASES

*McKellips v. Kumho Tire Co.,*
  305 F.R.D. 655 (D. Kan. 2015)................................................................. 12

*Payless Shoesource Worldwide, Inc. v. Target Corp.,*
  237 F.R.D. 666 (D. Kan. 2006)................................................................. 12

*Roberts v. Colorado State Bd. of Agric.,*
  998 F.2d 824 (10th Cir. 1993)................................................................. 2, 5

### RULES

Fed. R. Civ. P. 36................................................................................ 11, 17
Fed. R. Civ. P. 37................................................................................ 11, 12

### REGULATIONS

44 Fed. Reg. 71413–71423 .................................................................. 5, 20, 24

4825-0651-3800, v. 2

MEMORANDUM OF POINTS AND AUTHORITIES

## I.      Introduction

The Attorney General of the State of Utah, and his clients, Granite School District, Jordan School District and Canyons School District (collectively the ***"Districts"***) claim they do not understand what "girls" means.[1] They also claimed, more than 18 months into a lawsuit about girls' football, to be confused about what "football" means. According to the Districts and their counsel, equally baffling were the terms "girls football," "girls-only football," "girls-only flag football" and "powder puff." Even unarguably anodyne words like "sport," "team," "students," "participate," and "high school sport" were vague and ambiguous according to both Utah's chief law enforcement officer and the school districts charged with collectively overseeing thousands of student athletes and more than ten thousand students. In total some 69 words whose meaning can only be misunderstood through great effort have been deemed "vague and ambiguous" at one time or another by the Districts and their counsel. Here is the list:

| | | |
|---|---|---|
| 1. girls | 21. money | 41. viable |
| 2. football | 22. spent | 42. viable football team |
| 3. girls' football | 23. budgets | 43. normal competitive region |
| 4. girls-only football | 24. federal funds | 44. interscholastic competition |
| 5. girls-only flag football | 25. receive funding | 45. survey |
| 6. powder puff | 26. compensation | 46. assessments |
| 7. form of football | 27. activity | 47. questionnaires |
| 8. whatever form | 28. clubs | 48. supervision |
| 9. sport | 29. offer | 49. conducted |
| 10. team | 30. offered | 50. oversaw |
| 11. sports teams | 31. offered to boys | 51. overseen |
| 12. team rosters | 32. students | 52. allow |
| 13. high school sport | 33. same | 53. dictated |
| 14. sanctioned sport | 34. comparable | 54. certified |
| 15. sanctioned | 35. prefer | 55. standards |
| 16. new girls sport | 36. interested | 56. officiated |
| 17. sporting events | 37. popular | 57. training |
| 18. spectator | 38. highest participation | 58. coaching |
| 19. played | 39. insufficient room | 59. publicity |
| 20. participated | 40. sufficient | 60. tryouts |

---

[1] At the very least they find the word "girls" so vague and ambiguous that they object to its use at least 10 times in the context of this Title IX lawsuit, wherein the sole factual issue is the Districts' failure to provide equal athletic opportunities to female students.

| | | |
|---|---|---|
| 61. cut | 64. representations | 67. procedure |
| 62. assertion | 65. plan of program expansion | 68. used |
| 63. applications | 66. policy | 69. most knowledgeable |

While the sheer length and the specific words on the list speak to the Districts' pervasive practice of making questionable objections, the extent to which the Districts' unwillingness to understand English has disrupted the Plaintiffs' ability to obtain discovery is perhaps better illustrated by how all these objections have gutted Plaintiffs' discovery requests. In Request For Admission Number 15 to Jordan School District, Plaintiffs asked:

> Admit that 126 girls would be a sufficient number to form a viable football team that could participate in interscholastic competition within Bingham High School's normal competitive region.

(*See* Ex. F, Jordan at p. 10) After excising all the words Jordan claimed were "vague or ambiguous[2]" in its initial response, all that was left of the request was this:

> Admit that 126 . . . would be a . . . number to form a . . . that could . . . in . . . within Bingham High School's. . . .

Now, after a phone call, 16-page meet and confer letter, and recent email, Jordan has filed an Amended Discovery response with fewer objection, which would still read as follows:

> Admit that 126 . . . would be a sufficient number to form a . . . that could participate in interscholastic competition within Bingham High School's. . .

An improvement, sure, but still incomprehensible.

This lawsuit is about compelling the Districts to offer girls equal participation in sports, and specifically in football. Each year hundreds of girls already play football at official school events put on by many of the high schools in the Districts. For the 2018–19 school year, more than 700 girls have already participated in football against other girls through "powder puff" games at 11 high schools in the Districts that offer powder puff. Powder puff is, at every school Plaintiffs

---

[2] Among the terms that Jordan felt were vague and ambiguous, the following words and phrases were lifted directly from the Tenth Circuit's decision in *Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 827–29 (10th Cir. 1993) or the Department of Education's Office of Civil Rights 1979 Policy Interpretation: "sufficient", "viable," "team," "participate," "interscholastic competition," and "normal competitive region."

are aware of, flag football for girls only. Although there are dozens of other common phrases that the Districts have pretended not to understand, the Districts' denial of virtually every request for admission is really about the Districts' willful and continued "vague and ambiguous" objections to every phrase Plaintiffs have used to describe girls playing football as a high school activity, and specifically the refusal to interpret the phrase "girls-only football" with even a shred of common sense, or as Plaintiffs have told the Districts they intended it to be interpreted.

Notwithstanding meet and confer phone calls, letters, and emails in which Plaintiffs have explained that their use of the term "girls-only football" is "inclusive of, if not coterminous with, 'powder puff,'"[3] the Districts insist on objecting to "girls-only football" and adopting a definition that excludes "powder puff." This willful misinterpretation has the effect of rendering most of Plaintiffs' discovery incomprehensible, contradictory, and self-defeating.

The Districts' approach has not been a consistent inability to understand terms, but rather, a staged assault on the English language. In their responses to Plaintiffs' first set of written discovery, the Districts claimed not to understand what "powder puff" meant. Well enough, in the next round Plaintiffs changed terminology to address the Districts' objection, generally using "girls-only football" as the replacement for the specific phrase "powder puff" that the Districts objected to in the first round of discovery. In response the districts claimed that every replacement to that phrase Plaintiffs had used—"girls-only football" and "girls-only flag football" to name but two—was vague and ambiguous. The Districts' professed inability to understand any phrase used to describe girls playing football gives Plaintiffs no ability to ask about this core subject.

In any event, the Districts' preferred interpretation of "girls-only football" leads them to claim that virtually all of Plaintiffs' discovery requests are riddled with false factual premises and that Plaintiffs are so obtuse that they used their limited requests for admission to ask the Districts to admit, over and over and over again, that the Districts are offering the very sport that the Plaintiffs are suing the Districts for failing to offer. The Districts cannot have believed in good

---

[3] See email of D. Loren Washburn to Rachel Sellers dated 2/6/2019 (*See* Ex. E)

faith that this is what Plaintiffs were asking. Yet, rather than give up their chosen definition of "girls-only football," they have engaged in evasive and disruptive discovery tactics.

The Districts, after initially denying every single request for admission have now given up on making a direct response to many of Plaintiffs' requests; instead, they have elected to respond by merely affirming that they did not lie in their prior interrogatories and that documents previously produced in discovery are accurate. This defeats the purpose of a request for admission, expands, rather than minimizes discovery, and has wasted dozens of hours of Plaintiffs' time.

The combined experience of Plaintiffs' litigation team does not encompass an equal instance of studied incomprehension of almost every word in a set of discovery requests. As the Districts' attorneys have, even after amending their discovery responses, failed to admit facts that are probably true, the Plaintiffs ask for sanctions under Rules 37 of the Federal Rules of Civil Procedure (**"Rule 37"**) to include: (a) the Districts being required to respond seriously to Plaintiffs' discovery requests, (b) the Districts paying the costs and fees incurred by the Plaintiff in bringing this Motion, (c) the Districts paying costs and fees incurred by Plaintiffs in taking such depositions as are made necessary by the Districts' evasive discovery tactics, and (d) the Court authorizing Plaintiffs to take more than the 15 depositions allotted to Plaintiffs in the present scheduling order.

## II.    Statement of Facts

The Plaintiffs ask for the institution of girls football; the Districts resist this request. The Districts are not in compliance with Title IX's mandate that they provide equal athletic opportunities to girls as they provide to boys. Though they are not in compliance with Title IX, they seek refuge in the safe harbors of what has become known as the effective accommodation test. As to the first two safe harbors under that test, the Districts acknowledged that the sports opportunities they offer to girls are neither proportional, nor even roughly proportional, to girls' enrollment at their schools—meaning they do not qualify. Plaintiffs moved for, and the Court granted, summary judgement in the Plaintiffs' on the second safe harbor: the Districts do not have

a history of expanding opportunities for girls, or making any efforts toward gauging girls' developing interests in sports. (*See* ECF No. 44.)

This leaves in dispute only one safe harbor under the effective accommodation test. *See e.g., Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 827–29 (10th Cir. 1993). This third prong requires the Districts to fully and effectively accommodate all girls interests by offering sports to girls if "there is sufficient interest and ability among the members of the excluded sex to sustain a viable team and a reasonable expectation of [interscholastic] competition for that team." 44 Fed. Reg. at 71,418 § VII(C)(4)(a)(2)[4]; *see also, Roberts*, 998 F.2d at 831. In other words, if there are enough girls interested in football to form a team, and if there is a likelihood of interscholastic competition for that team, the Districts may not take refuge in the third safe harbor. In an April 20, 2010, "Dear Colleague" letter, the United States Department of Education's Office For Civil Rights explained that one of the factors to be considered in determining whether there is sufficient interest in the sport is participation in a club or intramural offerings of the sport. (*See* Ex. A at p. 6.)

Plaintiffs, accordingly, tried to take discovery on girls' participation in football when it is offered to them as an intramural game by the Districts. Specifically, Plaintiffs asked the Districts to admit that girls are interested in playing football during the one time each year when the Districts, or at least many of the schools within the Districts, offer girls the chance to play football against other girls during powder puff games. Powder puff is advertised by the Districts to their female students as "8-on-8 football", a "great opportunity for [Riverton High School] girls to play football", "a week for flag football games JUST FOR GIRLS!" (Districts 000513), and "a football game of their own?!" (*See* Ex. H).

When the Districts offer football to girls, the girls participate. For example, at Riverton High School, girls-only football—in the form of the Riverton High School Powder Puff

---

[4] Although that particular provision of the regulation uses the word "intercollegiate," the regulation explains under the section heading "Scope of Application," that the regulation's "general principles will often apply to club, intramural, and interscholastic athletic programs, which are also covered by the regulation." 44 Fed. Reg. at 71,413 § III. Thus, interscholastic.

tournament—is the most popular athletic opportunity offered to girls (or, for that matter, boys), averaging well over 200 girls each year.[5] The fact that more female Riverton High School students play football when they have the opportunity to play against other girls than participate in any UHSAA sanctioned sport offered at Riverton High School seems relevant—and indeed is deemed relevant by the Department of Education's Office for Civil Rights—to whether there is interest among girls in Jordan School District in football that is not being met by Jordan's sports offerings. The experience at Riverton High School, while the high-water mark for girls' participation, is far from an aberration. Powder puff is offered at 11 of the 18 high schools in the Districts; at those schools more than 700 girls have participated in powder puff football so far in the 2018–19 school year.

        The Districts have resisted Plaintiffs efforts to acknowledge these simple facts in the form of requests for admission. In their original responses to Plaintiffs' second round of discovery, the Districts objected to virtually every word except for common prepositions. These objections touched the most foundational concepts in a Title IX lawsuit, like "girls" and "sport." The objections also alleged that terms used by the Tenth Circuit and Department of Education's Office for Civil Rights were vague and ambiguous. Context hardly mattered; the Districts objected to "girls" in some 10 separate requests for admission. For example, none of the Districts could comprehend what was meant by the word "girls" in the following request:

> Admit that neither Canyons School District nor the high schools within Canyons School District has ever conducted a survey of the *girls* who participate in girls-only football as offered as an activity by the high schools within Canyons School District to determine whether *girls* would prefer tackle football.[6]

(*See* Ex. F, Canyons at p. 6) (emphasis added).

---

[5] The second most popular athletic offering is the UHSAA sanctioned sport of girls track and field, which has fewer than half as many participants per year.

[6] A version of this request for admission was made to each of the Districts.

Again, this request was not some lark, as the Department of Education's Office for Civil Rights' 2010 Dear Colleague letter explains that one indicator of interest can be found in "interviews with students . . . regarding interests in particular sports." (*See* Ex. A at p. 6).

Similarly, Jordan School District could not understand what "girls" meant in the following request, which is also discussed above:

> Admit that 126 ***girls*** would be a sufficient number to form a viable football team that could participate in interscholastic competition within Bingham High School's normal competitive region.

(*See* Ex. F, Jordan at p. 10).

Jordan's response to this particular request bears particular scrutiny. In Response to Request No. 15, Jordan School District responded with the following pearl:

> In addition to the above objections, Jordan objects to Request No. 15 as vague and ambiguous in the use of the terms "<u>viable</u>" "<u>sufficient</u>," "***girls***," "<u>team</u>" "football," "participate," "***girls***," "<u>normal competitive region</u>," and "<u>interscholastic competition</u>." Jordan also objects to Request No. 15 as overly broad and vague and ambiguous as to time frame. Subject to the foregoing objections, Jordan responds as follows: **Deny**.

(Emphasis in ***bolded-italics*** and <u>underscore</u> added, emphasis in the word "Deny" is in original).

Apparently "girls" was so confusing that Jordan objected to its use twice, just for good measure, even though "girls" was used only once in the request. The underscored words, deemed vague and ambiguous by Jordan School District, are lifted directly from the Tenth Circuit opinion in *Roberts* and the Department of Education Policy Interpretation it cites. Thus, apparently the Tenth Circuit and Department of Education, which are collectively responsible for interpreting and administering Title IX, do not meet Jordan's high standards of language clarity. What was left of Plaintiffs' request for admission after excising all the words Jordan School District professed not to understand is gobbledygook:

> Admit that 126 . . . would be a . . . number to form a . . . that could . . . in . . . within Bingham High School's. . . .

Had Jordan School District responded with an inkblot the effect would have been about the same.

The Districts also professed to have no idea what football is, regardless of what words are used to ask. As noted above, in the first set of discovery, the Districts found the phrase "powder puff" vague and ambiguous, or at least so went their objection. Plaintiffs got the message and mostly avoided using the allegedly vague and ambiguous term "powder puff" in their second round of discovery, primarily substituting in "girls-only football." The Districts moved the goal posts, now accepting "powder puff" without objection in its limited use, but claiming they could not discern the meaning of "girls football," "girls-only football," and "girls-only flag football," "girls football in whatever form, including Powder Puff or girls-only flag football," and indeed even "football" itself. Further confusing were the sports-related terms "sport," "team," "participate," "high school sport," and "sanctioned sport."[7]

Such willful ignorance obviously made hash out of the Districts' discovery responses, in particular their responses to virtually all of Plaintiffs' Requests for Admission. The Districts' denied every single one of these requests, always under a welter of "vague" and "ambiguous" objections that made it impossible to determine what the denial meant.

Plaintiffs' counsel quickly 'met-and-conferred' with the Districts' lawyers by phone and letter, but to little effect. The Districts' counsel replied to Plaintiffs' January 25 Letter (*See* Ex. C) with a largely unyielding missive on January 31 (the ***"Jan. 31 Letter,"*** attached hereto as Ex. D). The Districts did budge a little—they conceded (for example) that maybe they could understand the words "football," "sport," and "team" after all. (*See* Ex. D at p. 3.) As for the other terms: well, "participate" was "vague and ambiguous because it can include individuals participating in the sport in ways other than playing on the field (e.g. team manager)" as if this lawsuit was about that. (*See id.* at 2.)  "Offer," "offered," and "sanctioned" were objectionable as those terms "could include club or intramural sports affiliated with the schools," but the Districts would withdraw those objections "to the extent that the terms only include UHSAA-sanctioned sports" (as if this

---

[7] The list of all the words the Districts objected to in the course of two rounds of discovery runs to 69 words and phrases, which are listed at pp. 3–4 of the Jan. 25, 2019, letter (the ***"Jan. 25 Letter"***) from Plaintiffs' counsel to the Districts' counsel on this matter, a copy of which is attached as Exhibit C.

lawsuit was about anything else). "Sufficient" or "viable" were vague in that some football is played with a seven-person team (as opposed to eleven)[8] and, really, how could the Districts know? (*Id.* at 3.) And the word "comparable" is "by its very nature vague and ambiguous." (*Id.*)

Most wearingly, the Districts said they could not admit to any facts about powder puff or other "girls only football" activities at their high schools because "they did not consider 'powder puff' as equivalent to competitive girls-only football . . .which you have presented as a template for the kind of program you want the Districts to implement." (*Id.* at 1.) This was something of a jerry-rigged "gotcha" argument by the Districts, namely that: (1) the Plaintiffs allege in this case that powder puff football is not a proper girls sport for Title IX and Equal Protection purposes, (2) Plaintiffs' inquiries in discovery about "girls-only football" cannot therefore refer to powder puff but must mean competitive tackle football which everyone knows the Districts are *not* offering to girls, and therefore (3) Plaintiffs have utterly contradicted the basis of their own suit in asking the Districts to admit that they have ever had anything to do with "girls-only football." (*Id.* at 1–2.) The Districts profess to be surprised at the obvious fact that when Plaintiffs asked in discovery about "girls-only football" they meant that term to be inclusive of powder puff and other activities that are actually taking place, instead of the competitive tackle football which obviously is not. (*Id.*)

The Districts have not had to suffer without input from Plaintiffs on what was meant. Most recently, in an email of February 6, 2019, counsel explained that "we do not share your definition of 'girls-only football' since we quite clearly used ***'girls-only football' as at least inclusive of, if not entirely coterminous with 'powder puff.'***" (*See* Ex. E attached hereto (emphasis added).) Further, counsel attempted to debunk the Districts' claim that they were simply using the term "girls-only football" "how the term is used in [the] Second Amended Complaint." Specifically,

---

[8] The Districts never explained how this alleged confusion would make any difference. After all, when Plaintiffs were asking whether 126 girls were enough to form a team at Bingham High School, does the feigned confusion over whether Plaintiffs meant seven-per-side or eleven-per-side make any difference at all?

counsel pointed out to the District's lawyers that, neither "girls-only football" nor "girls only football" is ever used in the Second Amended Complaint. (*Id*.)

On the afternoon of February 7, 2019, the Districts served Amended Discovery Responses (*See* Ex. G). While the Districts withdrew many of their objections, they continued to object to "girls" and "girls-only football" as vague and ambiguous. Further, while the Districts no longer deny every single request for admission, many of their new responses are neither admissions nor denials. For example, here is how Jordan responded to Request Number 4:

> **Request No. 4**: Admit that at Riverton High School each year between 2013-14 and the present year more female students participated in girls-only football when it was offered as a Riverton High School Activity than participated in any sanctioned sport offered by Riverton High School.

> **Response**: In addition to the above objections, Jordan objects to Request No. 4 as vague and ambiguous in the use of the terms "girls-only football" and "any sanctioned sport." Subject to the foregoing objections, Jordan responds as follows: <u>Jordan admits that the information provided in its Title IX reports is true and accurate to the best of its knowledge. Jordan also admits that the information in its response to Plaintiffs' Interrogatory No. 6 is true and correct to the best of its knowledge</u>. Jordan denies Riverton High School offers "girls-only football" consistent with its understanding of the term as used in Plaintiffs' Second Amended Complaint and other documents.

(Underscored emphasis added, bold in original.)

While a re-affirmation that the Districts did not provide bogus documents or interrogatory responses is useful, it is not a permissible response to the request to admit the facts at issue.

The Districts, finally, advise Plaintiffs not to "continue a discovery dispute over the Requests and the Districts' responses" but to schedule a raft of 30(b)(6) depositions "where you can explore the issues you intended to address in the Requests." (Ex. D at p. 4.) Plaintiffs asked for dates for depositions of District-employee witnesses three weeks ago, and so far have not been given a date that any District employee can be available to be deposed. Discovery closes in approximately 45 days.

## III.   <u>Governing Legal Standard</u>

Rule 36 Requests for Admission serve "two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Fed. R. Civ. P. 36, Notes of Advisory Committee on Rules—1970 Amendment. Requests for Admission may relate to "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). Here, Plaintiffs requested that the Districts admit certain facts: the number of girls who participate in powder puff girls-only football when it is offered by the Districts, and that more girls participate in powder puff than in most sanctioned sports. Plaintiffs also requested an admission of a mixed question of fact and law: that the number of girls at issue would be sufficient to form a viable football team that could participate in interscholastic sports. The Districts have effectively evaded making any coherent response to those requests.

Under Rule 36, "[t]he requesting party may move to determine the sufficiency of an answer or objection." Fed. R. Civ. P. 36(a)(6). "On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." *Id*. Under Rule 36, the Court may order fees under the terms of Rule 37(a)(5), which provides that "[i]f the motion is granted . . . the court must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5).

A litigant may also move for an order compelling discovery under Fed. R. Civ. P. 37(c)(2). That rule provides, "If a party fails to admit what is requested under Rule 36 and if the requesting party later proves . . . the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof." Fed. R. Civ. P. 37(c)(2).

With respect to discovery objections on grounds of "vagueness" or "ambiguity," district courts in the Tenth Circuit have held as follows:

> ***The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity***. A party responding to a discovery request should ***exercise***

*reason and common sense to attribute ordinary definitions to terms and phrases utilized in the discovery requests*. To clarify their answers or responses, the responding party may include any necessary, reasonable definition of such terms or phrases.

*McKellips v. Kumho Tire Co.*, 305 F.R.D. 655, 679 (D. Kan. 2015) (emphasis added); *see also*

*Payless Shoesource Worldwide, Inc. v. Target Corp.*, 237 F.R.D. 666, 675 (D. Kan. 2006).

## IV.   Argument

### A.   The Districts Cannot Meet Their Burden to Show That the Objected-To Words Are Vague or Ambiguous.

The Districts cannot meet their burden (given the case law above) of showing that Plaintiffs' discovery requests were vague and ambiguous. "Reason and common sense" (again, citing that case law) would have made it quite clear what Plaintiffs were asking about. Of course, if the Districts had in good faith been confused about any of the terms in Plaintiffs' discovery requests they could have contacted Plaintiffs' counsel for clarification, but of course, then they would have had to use that definition. In any event, Plaintiffs' counsel provided clarification in the January 25 Letter and their email on February 6th, whether the Districts wanted it or not.

That the Districts' objections were not in good faith is also evidenced by their practice of making and then withdrawing objections to simple terms such as "football," "sport," "team" and in some, but not all, cases "girls." How any of these words were ever even possibly vague or ambiguous has never been explained, nor have the Districts offered a good reason why they forced Plaintiffs to go through an arduous round of phone calls and correspondence before the Districts would admit to knowing what those words mean.

One of the objections the Districts have continued to make is that the phrase "girls-only football" is vague or ambiguous. As noted above, prior to the most recent amended responses by the Districts, Plaintiffs' counsel has gone to great lengths to explain the intended meaning of the phrase "girls-only football." In a letter—indeed on the first page—of the January 25 Letter— Plaintiffs' counsel explained:

> *Your school district clients offer girls only one meaningful opportunity to play football each year. That opportunity is provided in the form of a girls-only football tournament, or at some schools a single girls-only game*. Not every high school offers even this

limited opportunity. This football experience is provided as a school activity, for which girls are required to pay fees and sign waivers. Typically— perhaps exclusively—it takes place around the homecoming football game. ***During that single opportunity to play football against other girls, which is usually called Powder Puff at most schools, girls routinely show intense interest in playing football. As a matter of fact, based on the numbers you have disclosed, at many schools Powder Puff, girls-only flag football, or girls-only football, whatever you choose to call it (on which, more later, though throughout this letter I will use the term "girls-only football")***, it is the single largest athletic participation event for girls offered by the high schools. Based on the numbers you have provided, every school that provides girls-only football as an activity has enough girls participate to form a competitive football team with a roster large enough to participate in interscholastic competition.

(Ex. C at p. 1.)

Later in the letter, Plaintiffs' counsel explained, "if you wanted to give a reasonable definition of "girls-only football" that clarified that the thing you were referring to in your RFA responses as "girls-only football" was powder puff, that would be fine." (Ex. C at p. XX)

After a responsive letter from Districts' counsel, Plaintiffs' counsel wrote an email again explaining that:

We've told you that we do not share your definition of "girls-only football" since we quite clearly used "girls-only football" as at least inclusive of, if not entirely coterminous with "powder puff." Your continued intransigence in holding onto your definition, is, from my perspective, a bad faith ploy you are using to deny all the requests you would have to admit if you applied common sense to the interpretation of the words we use, which you have consistently refused to do—see "girls", "sport", "football", etc.

(*See* Ex. E at p. 2). In short, the Districts know that Plaintiffs intended the phrase "girls-only football" as used in the second set of discovery requests to include "powder puff."

The Districts refuse to answer Plaintiffs discovery using the definition of "girls-only football" that Plaintiffs intended. Rather, the Districts continue to answer using a definition of "girls-only football" that they know Plaintiffs did not intend and do not share.

The Districts deny that they "offer 'girls-only football' consistent with its understanding of the term as used in Plaintiffs' Second Amended Complaint and other documents and information." (*See* Ex. G, Jordan at p. 8). This recitation, repeated more than 10 times by the Districts in their amended discovery responses, is the Districts' only explanation for their contention that "girls-only football" is vague and ambiguous. It is also completely false. For starters, neither "girls-only

football" nor "girls only football" ever appears in the Second Amended Complaint. Indeed, the

only time "girls-only" or "girls only" appears in the Second Amended Complaint, it refers to golf.

The Districts know that the phrase does not appear in the Second Amended Complaint because

Plaintiffs told them so:

> When we try to meet and confer you say false things like that you 'understand 'girls only
> football' to be consistent with how the term is used in your Second Amended Complaint'
> which I say is false because 'girls only football' or for that matter 'girls-only football' are
> not in the Second Amended Complaint.

(*See* Ex. E at p. 2).

Also, the Districts could simply read the Second Amended Complaint and find that the

phrase simply is not there. As to the second part of the Districts' explanation—that their use of

"girls-only football" is consistent with their understanding of Plaintiffs' use in "other documents

and information"—Plaintiffs have no idea what this refers to.

The Districts' approach is completely befuddling. Plaintiffs have explained what they

meant by "girls-only football" and the Districts' explanation of their alleged "understanding" of

"girls-only football" is false because the phrase isn't used in the Second Amended Complaint.

Why the Districts simply refuse to answer Plaintiffs' discovery using the definition Plaintiffs have

provided is unexplained.

Further, the Districts could not possibly have ever thought that Plaintiffs intended the

meaning of the phrase that the Districts insist on using. Why would Plaintiffs ask the Districts to

admit that the Districts offer, and hundreds of girls participate in, the very sport that Plaintiffs are

suing the Districts for failing to offer? The notion that the Districts believed that Plaintiffs intended,

in every single request for admission, to ask about something that everyone knows is not taking

place would be comical had it not entirely derailed Plaintiffs' discovery.

Plaintiffs' intended meaning of "girls-only football" was plenty clear given the context of

the requests, as instanced by Plaintiffs' Interrogatory No. 12:

> For each of the last two years . . . identify the adult . . . who oversaw or is most
> knowledgeable about *girls football in whatever form, including Powder Puff or girls-*

*only flag football* at each high school in Jordan School District that offers *girls football* as an activity or sport.

(Districts' Responses to Plaintiffs' Second Set of Written Discovery, attached hereto as Exhibit F (emphasis added).)

The same is true of Plaintiffs' Request for Admission No. 5:

> Admit that during the 2018-19 school year at Riverton High School, *girls-only football was such a popular activity* that even though the school plans for more than 200 girls to participate in *the annual girls-only Powder Puff football tournament*, the school did not allow all girls who were interested in participating in *girls-only football* to participate because of insufficient room on *girls-only football team rosters*.

(*Id.* (emphasis added).)

The mental gymnastics necessary to pretend to believe that "girls football" or "girls-only football" as used in these requests is something that does not include "powder puff" would strain even the most limber mind.

Finally, it bears repeating that the only reason Plaintiffs used "girls-only football" rather than "powder puff" in its second round of discovery was that the Districts had previously objected to "powder puff" as vague and ambiguous.

Such have been the Districts' tactics: gaslighting Plaintiffs with overwhelming and insincere objections, playing a game of whack-a-mole-ambiguity, and willfully misinterpreting Plaintiffs' requests.

### B. Many of the Requests for Admission That Jordan School District Refused to Admit Can Be Proven with Their Own Discovery Responses.

In the first set of discovery, after objecting to "powder puff" and "participated" as vague and ambiguous, Jordan District explained that, "the following is the number of girls who participated in girls-only flag football or powder puff at the High Schools."

| Year | Bingham | Copper Hills | Herriman | Riverton | West Jordan |
|------|---------|-------------|----------|----------|-------------|
| 2013-14 | No Information | 41 | 65 | 317 | 0 |
| 2014-15 | No Information | 44 | 49 | 233 | 0 |

| 2015-16 | No Information | 73 | 70 | 334 | 0 |
| 2016-17 | No Information | 90 | 60 | 239 | 0 |
| 2017-18 | 126 | 94 | 43 | 218 | 0 |

In the second set of discovery, Plaintiffs requested, in Request to Admit No. 10, that Jordan School District, "Admit that at Riverton High School from the 2013–2014 school year to the 2017–18 school year an average of 268 girls participated in girls-only football each year with a low of 218 girls." Jordan School District denied the request.

The math checks out: the lowest number in the Riverton column is 218, and the number of participants averages out to 268.2. The only possible basis for Jordan to deny is that it was playing word games.

Jordan School District, after initially denying this request for admission, has now amended[9] its response to the following:

> Jordan admits that the information provided in its Title IX reports is true and accurate to the best of its knowledge. Jordan also admits that the information in its response to Plaintiffs' Interrogatory No. 6 is true and correct to the best of its knowledge. Jordan denies Riverton High School offers "girls-only football" consistent with its understanding of the term as used in Plaintiffs' Second Amended Complaint and other documents and information.

(*See* Ex. G, Jordan at p. 6). This amended response clouds the issue even more than the initial denial. Under Fed. R. Civ. P. 36, "A matter is admitted unless . . . the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Because both a response and an amended answer have been provided, the District has not failed to answer. However, the amended response does not comply with Rule 36, which provides:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the

---

[9] It is not clear that the Districts' effort to amend is legally effective. Rule 36(b) establishes that admissions can only be amended upon motion and with leave of the Court. Whether denials can be amended without permission of the Court is a different question.

substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.

*Id.* at 36(a)(4).

In the amended answer to Request to Admit No. 10, there is no clear admission, nor a specific denial. The Districts are now simply refusing to fulfill their obligation to respond to Plaintiffs' requests for admission.

In the end, it is inescapably true that "at Riverton High School from the 2013-2014 school year to the 2017-18 school year an average of 268 girls participated in girls-only football each year with a low of 218 girls." Jordan's amendment that simply points to its prior interrogatory response is a *de facto* admission of the requests. However, the failure to directly admit it leaves this issue as an unresolved factual matter in the case, and therefore deprives Plaintiffs of the benefit of a request for admission.

This same analysis applies to Jordan's amended response No. 12[10] (Herriman High School) and Request No. 14 (Copper Hills High School), each of which has the exact same response as reported above. In each of these requests, which would only require that Jordan District admit facts established by its response to Interrogatory No. 6, the Districts instead simply fail to admit or deny the request. In the earlier response, the denial was nothing more than a word game by Jordan District.

C.  Other Requests Are Proved by The Districts Responses and Information They Provided in Discovery.

Jordan's other responses in the amended discovery answers are similarly evasive and replace denials that were baseless and rooted in word games with non-answers to the Requests to

---

[10] Because the undersigned is bad at numbering requests for admission, there were two Request No. 15s, one out of order in Plaintiffs' Requests for Admission. In Plaintiff's second round of discovery one Request No. 15 fell between No. 11 and No. 12 and the second fell where it would be expected, between Request No. 14 and Request No. 16. In Jordan's first response to those Requests, they used the same numbering as Plaintiffs used. In Jordan's amended answer they have renumbered the requests and responses. This results in some confusion between Jordan's two responses.

Admit. For example, Request to Admit No. 4 asks Jordan to admit that: "[A]t Riverton High School each year between 2013-14 and the present year more female students participated in girls-only football when it was offered as a Riverton High School Activity than participated in any sanctioned sport offered by Riverton High School."

Jordan originally denied the request. Then, in its amendment, Jordan District responded with the same evasive non-answer it used to respond to other Requests for admission:

> Jordan responds as follows: Jordan admits that the information provided in its Title IX reports is true and accurate to the best of its knowledge. Jordan also admits that the information in its response to Plaintiffs' Interrogatory No. 6 is true and correct to the best of its knowledge. Jordan denies Riverton High School offers "girls-only football" consistent with its understanding of the term as used in Plaintiffs' Second Amended Complaint and other documents.

Jordan provided a Title IX report spreadsheet in its discovery, for the year 2017–18. That document reports that the maximum number of girls that participated in any activity or sport at Riverton High School (designated as RHS on the report) is 75, the number of girls who participated in Track & Field. (Districts 000472.) In contrast, for that same year, 218 girls participated in powder puff, or "girls-only football when it was offered as a Riverton High School Activity." In other words, the request should have been admitted. But it was not. First it was denied, and now in the amended response, it is not directly resolved.

Requests Nos. 6, 7, 8, and 9 are similar, and prompted the same evasive and non-compliant response in the Districts' amended responses. In each case the number of girls who participated in powder puff are found in the response to Interrogatory No. 6 and the number of girls who participated in sanctioned sports was found in Title IX reports. Each of these requests for admission was initially denied by Jordan. Now, Jordan has withdrawn its denial but has still not admitted the undisputed facts; Jordan, it appears, knows exactly where to find the information it needs to respond to Plaintiffs' Requests for Admission and knows exactly what reports would prove the facts they were being asked to admit. They simply refuse to connect those dots and make those admissions.

D. <u>There Are Enough Girls Who Played Football in Official School Activities This Year to Form Enough Football Teams to Have A Competitive League</u>.

Finally, in Jordan's responses to Requests for Admission Nos. 11, 13, 15, 16 and 17; in Granite's denial of Request No. 4; and, in Canyons' denials of Request No. 4, the Districts make partial admissions that are hedged with caveats, objections and partial denials. Here, Plaintiffs asked the Districts to admit that the number of girls who participate in "girls-only football" as established in earlier requests, was sufficient to form viable teams at the various schools that would have the possibility of participation in interscholastic competition; essentially the inquiry mandated by the 1979 Policy Interpretation, <u>44 Fed. Reg. at 71,418 §VII(C)4(a)(2)</u>.

In the meet and confer communications back and forth, the parties mostly discussed Jordan School District's responses. Jordan originally denied Request Nos. 11, 12/13, 14/15, 15/16, and 16/17, all of which request Jordan to admit that the number of girls who participate in "girls-only football" or "powder puff" at the various schools—as reflected by Jordan's response to Interrogatory No. 6—would be sufficient to form a team that could compete in interscholastic competition in the schools' ordinary competitive region.

Jordan's new response to each request is as follows:

Jordan objects to Request No. 11 as vague and ambiguous in the use of the terms "viable football team," "girls," and "normal competitive region." Jordan also objects to Request No. 11 because it is an incomplete hypothetical that would require Jordan to admit facts not presented. Subject to the foregoing objections, Jordan responds as follows: Jordan admits that if there were either 218 or 268 female students who are eligible to play under the applicable policies and regulations and are willing and able to meet the requirements and commitments of the hypothetical football team, then there would be enough female students to form a football team. Assuming that "normal competitive region," as used in Request No. 11 is referencing the regions and classifications defined by the UHSAA, Jordan denies that the hypothetical team referenced in Request No. 11 could participate in interscholastic competition in Riverton High School's "normal competitive regions" because Jordan is unaware of any existing girls-only football teams consistent with its understanding of the term as used in Plaintiffs' Second Amended Complaint and other documents at any of the high schools within Riverton High School's "normal competitive region."[11]

---

[11] The phrase "normal competitive region" was a phrase from the Department of Education's Office of Civil Rights' Policy Interpretation and was used by the Tenth Circuit Court of Appeals in the decision in *Roberts v. Colorado State Bd. of Agric.,* 998 F.2d 824, 829 (10th Cir. 1993). The Districts say they understand "normal competitive region" to mean "the regions and classifications defined by the UHSAA." It is not clear this is what the OCR or the

The Districts' claim that "girls" is ambiguous seems to be an attempt to draw a distinction between "girls" and "girls who are eligible to participate in interscholastic competition under UHSAA's eligibility rules." This distinction is neither present in Plaintiffs' request, nor legally consequential. As the only circuit court to address the issue has found, the Districts' "position is foreclosed by Title IX's implementing regulations, which state that compliance 'is not obviated or alleviated by any rule or regulation of any organization, club, athletic or other league, or association.'" *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 858 (9th Cir. 2014)(quoting 34 C.F.R. § 106.6(c)). If girls want football, and the Districts are not providing equal opportunities, the Districts cannot use the girls' lack of eligibility under UHSAA rules as an excuse for not providing girls football. That said, since the request does not, at least in this new amendment, get in the way of the Districts making an accurate response, it is not the basis for which Plaintiffs are seeking sanctions.

The basis for which Plaintiffs are seeking sanctions is that the Districts deny that any team that was formed could participate in "interscholastic competition" because, "Jordan is unaware of any existing girls-only football teams." In essence, Jordan's position is that no matter how many girls within Jordan District want to play football, there will never be enough football-wanting girls in Jordan District to require Jordan to provide football in order to qualify for the third safe harbor. This, the argument goes, is because there cannot be interscholastic competition because there aren't yet any teams to compete against. The Districts' counsel explained in the January 31 letter

---

Tenth Circuit meant when they introduced that phrase into the law. Rather, it seems they were simply trying to point out that if competition was only available at a great distance (for colleges this might be far across the country) then the impracticality might be a basis not to require the institution to offer the sport. Here, there would be no basis for such an application since all the schools in all three Districts are in Salt Lake County. In any event, the regulations note that "Institutions may be required by Title IX regulation to actively encourage the development of such competition, however, when overall athletic opportunities within that region have been historically limited for the members of one sex." In other words, the Districts are not entitled to simply accept the lack of competition but must actively encourage the development of interscholastic competition.

that Jordan District's "four high school teams is not enough for interscholastic competition within the schools' 'normal competitive regions'" (*See* Ex. D at p. 4) and the request "assumes there are other interscholastic teams for them to play, which teams currently do not exist." According to Districts' counsel's January 31 letter, "this reasoning applies to similar responses by Granite and Canyons." Indeed.

Granite and Jordan, which had not provided powder puff participation numbers in response to the first round of discovery, were asked a different question:

> **Request No. 4**: Admit that at every high school within [Canyons/Granite] School District that offers girls-only football as an activity, the number of girls who participate in girls-only football is a sufficient number to form a viable football team that could participate in interscholastic competition within [Canyons/Granite] School District's normal competitive region.

> **Response**: In addition to the above objections, [Canyons/Granite] objects to Request No. 4 as vague and ambiguous in the use of the terms "viable football team," "girls," and "normal competitive region." [Canyons/Granite] also objects to Request No. 4 because it is an incomplete hypothetical that would require [Canyons/Granite] to admit facts not presented. Subject to the foregoing objections, [Canyons/Granite] responds as follows: As indicated in its Response to Interrogatory No. 6, ***[Canyons/Granite] does not have records identifying the number of female students who participated in the powder puff homecoming activity that takes place at some of its high schools and therefore does not have sufficient information to admit or deny whether the numbers are sufficient to form "viable football team[s]."*** [Canyons/Granite] denies its high schools offer "girls-only football" consistent with its understanding of the term as used in Plaintiffs' Second Amended Complaint and other documents and information. [Canyons/Granite] further responds that it assumes the term "normal competitive region" used in Request No. 4 is referencing the regions and classifications defined by the UHSAA. [Canyons/Granite] further responds that even assuming there were enough female students who are eligible to play under the applicable policies and regulations and are willing and able to meet the requirements and commitments of the hypothetical football team(s), [Canyons/Granite] denies that the hypothetical team(s) referenced in Request No. 4 could participate in interscholastic competition in Canyons' "normal competitive region" because [Canyons/Granite] is unaware of any existing girls-only football teams consistent with its understanding of the term as used in Plaintiffs' Second Amended Complaint and other documents and information at any of the high schools within [Canyons/Granite] "normal competitive region." (Emphasis added)

This response is false. Granite does have participation records. On January 2, 2019, the Districts' counsel produced documents with document control numbers Districts 000576 to 000779.[12] On page 000777, the number of girls who participated in powder puff at Granite School District high schools in 2018–19 is reported. Similarly, Canyons School District has some records. Districts 000740 provides rosters for what appears to be Brighton High School, and pages 000576–000707 provide records from Corner Canyon High School participation.

Based on those records, for the 2018–19 school year the following number of girls participated in powder puff at the following schools:

| SCHOOL | GIRLS PARTICIPATING | DISCOVERY PAGE |
|---|---|---|
| Cottonwood High School | 65 | Districts 000777[13] |
| Cyprus High School | 60 | Districts 000777 |
| Hunter High School | 43 | Districts 000777 |
| Olympus High School | 50 | Districts 000777 |
| Taylorsville High School | 40 | Districts 000777 |
| Riverton High School | 164 | Districts 000772–000776 |
| Herriman High School | 56 | Districts 000772–000776 |
| Copper Hills High School | 75 | Districts 000772–000776 |
| Bingham High School | 104 | Districts 000772–000776 |
| (Brighton High School?)[14] | 23 | Districts 000740 |

---

[12] These records were all marked as Attorneys Eyes Only because many of them contain personal identifying information about students who participated. As such, relevant records will be provided in a sealed addendum.

[13] These documents are marked Attorneys Eyes Only, and therefore, will be provided as a sealed addendum to this motion.

[14] The records provided by the Districts are not labelled by source, leaving Plaintiffs to guess which school's records are being reviewed in some instances.

| Corner Canyon High School | Approximately 35[15] | Districts 000576–000707 |

With the addition of the specific participation records, what Granite was being asked to admit—but denied—is that Cottonwood (65 girls), Cyprus (60 girls), Hunter (43 girls), Olympus (50 girls), and Taylorsville (40 girls) could each form a football team with the number of girls who participated in powder puff at their school. Similarly, the request to Canyons asked it to admit that Brighton (23 girls) and Corner Canyon (35 girls) could form teams. Granite and Canyons denied the request because they claimed not to have records. Since they do have records, and since Jordan admitted that as few as 41 girls could form a football team, it seems clear that schools within Granite and Canyons would also be able to form football teams capable of competing against other schools.

Simultaneous consideration of the responses of all three of the Districts demonstrates that the responses are misleading if not outright false and are not an accurate application of the law to the facts. Plaintiffs have proved the mixed factual and legal conclusion that the Districts refused to admit. Cottonwood, Cyprus, Hunter, Olympus, Taylorsville, Riverton, Herriman, Copper Hills, Herriman, Corner Canyons, and Brighton high schools all have enough girls who played powder puff football that if they all were to participate in officially sanctioned girls football, each of these schools could round out a roster capable of competing in interscholastic competition among each other.

The Districts claims that, they are "unaware of any existing girls-only football teams" against which the hypothetical teams could completely ignore all the other schools that would have enough girls to offer teams, and therefore, each response denies that the teams could compete in the schools' ordinary competitive region.[16] (*See* Ex. G, Jordan at pp. 9-13; Granite at pp. 4-6;

---

[15] The Districts provided copies of consent forms, rather than rosters or a tally, from Corner Canyon High School, and there appear to be some duplicates among the forms provided, suggesting the actual number may be lower than 35.

[16] The phrase "normal competitive region" was a phrase from the Department of Education's Office of Civil Rights' Policy Interpretation and was used by the Tenth Circuit Court of Appeals in the decision in *Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 829 (10th Cir. 1993). The Districts say they understand "normal competitive region" to mean "the regions and classifications

Canyons at pp. 5-6.) Of course, because there are eleven schools that would have enough girls to form teams, the fact that there are not any existing girls-only football teams does not mean that there would not be, upon order of this Court, schools against which they could compete.

Moreover, the 1979 OCR Policy Interpretation explains that Title IX may require institution to "actively encourage the development of [competition in their normal competitive regions] when overall athletic opportunities within that region have been historically limited for members of one sex. 44 Fed. Reg. at 71,418 §VII(C)(5)(c). In other words, far from being an excuse for not offering sports, the historical lack of competition in the Districts normal competitive region is, under the Title IX regulations, a call to action for these Districts.

The Districts' partial denials are false and the Plaintiffs have proved it.

## V.   Relief Requested

Plaintiffs request that the Court:

(1)     Enter an order that Plaintiffs have proven the matters denied by the Districts in Jordan's Amended Response to Requests for Admission 11, 13, 15, 16 and 17; in Granite's denial of Request No. 4; and, in Canyons' denials to Request for Admission No. 4. (Rule 37(c)(2))

(2)     Order that the Districts must pay the reasonable expenses, including attorneys' fees, in proving the matters denied by the Districts in Jordan's Amended Response to Requests For Admission 11, 13, 15, 16 and 17; in Granite's denial of Request No. 4; and, in Canyons' denials to Request for Admission No. 4 (largely the costs of meeting and conferring and filing this motion) and giving the Plaintiffs fourteen days to submit an affidavit of costs. (Rule 37(c)(2))

---

defined by the UHSAA." It is not clear this is what the OCR or the Tenth Circuit meant when they introduced that phrase into the caselaw. However, the regulations require that "Institutions may be required by Title IX regulation to actively encourage the development of such competition, however, when overall athletic opportunities within that region have been historically limited for the members of one sex." In other words, the Districts are not entitled to simply accept the lack of competition but must actively encourage the development of interscholastic competition.

(3)     Ordering the Jordan School District to amend its Amended Responses to Plaintiffs' Second Set Of Discovery Requests to provide a sufficient answer or objection to Requests for Admission 4, 6, 7, 8, 9, 10, 12[17], and 14. Rule 36(a)(6)

(4)     Entering an award of expenses for the effort required to address the Districts prior false denials and to address the present non-responses found in Jordan's Responses to Requests 4, 6, 7, 8, 9, 10, 12 , and 14.  (largely the costs of meeting and conferring and filing this motion) under Rules 36(a)(6) and 37(a)(5).

(5)     Entering an order amending the present scheduling order to allow Plaintiffs to take such depositions of District employees as are necessary to address the Districts evasive responses to Plaintiffs' requests.

## VI.    <u>Conclusion</u>

For all of the reasons given above, Plaintiffs respectfully ask this Court to: (a) order the matters in each of the Requests discussed above proved, (b) order the Districts to pay the costs and fees incurred by the Plaintiffs in bringing this motion, (c) order the Districts to pay the costs and fees incurred by Plaintiffs in taking such depositions as are made necessary by the Districts' evasive discovery tactics, and (d) allow Plaintiffs to take more than 15 depositions.


DATED: February 8, 2019                                SMITH WASHBURN, LLP


                                                       /s/ D. Loren Washburn
                                                       D. Loren Washburn

---

[17] The number provided here is the numbering used by Jordan District in its Amended Responses, which was necessary to correct Plaintiffs' mis-numbering.

PLAINTIFFS' MOTION TO COMPEL
CASE NO. 2:17-CV-00677, PAGE 25

| INDEX OF EXHIBITS | |
|---|---|
| **EXHIBIT NO.** | **DESCRIPTION** |
| A | "Dear Colleague" letter from the United States Department of Education's Office for Civil Rights dated April 20, 2010 |
| B | Districts' responses to Plaintiffs' First Set of Written Discovery |
| C | Plaintiffs' Meet and Confer Letter dated January 25, 2019 |
| D | Districts' Response to Plaintiffs' Meet and Confer Letter, Dated January 31, 2019 |
| E | Email correspondence from Plaintiffs' counsel to the Districts' counsel dated February 6, 2019 |
| F | Districts' Responses to Plaintiffs' Second Set of Written Discovery |
| G | Districts' Amended Responses to Plaintiffs' Second Set of Written Discovery |
| H | Districts' Discovery Documentation |

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2019, a true and correct copy of the foregoing **PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSE FROM CANYON, GRANITE, AND JORDAN SCHOOL DISTRICT** was served on the following persons via email:

    Rachel G. Terry
    Michael J. Teter
    UTAH ATTORNEY GENERAL'S OFFICE
    160 E. 300 S. 6th Floor
    P.O. Box 140856
    Phone: (801) 366-0100
    rachelterry@agutah.gov
    mteter@agutah.gov

*Attorneys for Defendants Canyon School District, Granite School District, Jordan School District, James Briscoe, Martin Bates, and Patrice Johnson*

    Mark O. Van Wagoner
    SAVAGE YEATES & WALDRON PC
    170 S. Main Street, #500
    Salt Lake City, Utah 84101
    Phone: (801) 328-2200
    movw@comcast.net

    D. Craig Parry
    Michael S. Lehr
    PARR BROWN GEE & LOVELESS
    101 South 200 East, Ste 700
    Salt Lake City, UT 84111
    Phone: (801) 532-7840
    cparry@parrbrown.com
    mlehr@parrbrown.com

*Attorneys for Defendant, UHSAA*

                                       /s/ Leigh Davis-Schmidt