Mark L. Smith (Utah Bar #11367)
D. Loren Washburn (Utah Bar #10993)
Jacob L. Fonnesbeck (Utah Bar #14176)
SMITH WASHBURN, LLP
8 E. Broadway, Suite 320
Salt Lake City, Utah 84111
Phone: (801) 584-1800
Fax: (801) 584-1820
lwashburn@smithwashburn.com
jfonnesbeck@smithwashburn.com

Brent Gordon (Utah Bar # 8794)
477 Shoup Ave, 101
Idaho Falls, ID 83402
Phone: (208) 552-0467
Fax: (866) 886-3419
brent@brentgordonlaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| S.G., by and through her general guardian, BRENT GORDON; *et al*., <br><br> Plaintiffs, <br><br> vs. <br><br> JORDAN SCHOOL DISTRICT, *et al*., <br><br> Defendants. | **PLAINTIFFS' MOTION TO CONDUCT SURVEY OF FEMALE STUDENTS' INTERESTS IN FOOTBALL** <br><br> Case No. 2:17-cv-00677-RJS <br><br> Magistrate Judge Dustin B. Pead <br><br> Judge Robert J. Shelby |

Plaintiffs seek an order under Rule 26 of the Federal Rules of Civil Procedure for leave to survey the interests and abilities of the defendant districts' students to play football.

## ARGUMENT

The Office for Civil Rights ("OCR") of the U.S. Department of Education enforces Title IX and its implementing regulations. *See* 34 C.F.R. pt. 106. In 1979, OCR published a policy

interpretation ("1979 Policy Interpretation") to provide educational institutions with guidance on Title IX's regulatory requirements. The 1979 Policy Interpretation sets forth a three-part test to determine whether an institution is effectively accommodating the athletic interests and abilities of its female students.

This Court has already entered partial summary judgment in favor of Plaintiffs that the districts do not comply with either parts one or two. Thus, the only avenue left for the districts is under part three ("Part Three").

Further, Plaintiffs have been appointed as representatives of a class under the equal protection claim. The survey is designed, in part, to evaluate girls and class members interests in football to support the equal protection claim.

OCR published a clarification of Part Three that states that "an institution can satisfy Part Three if it can show that the underrepresented sex is not being denied opportunities." *See* Office of Civil Rights, U.S. Dep't of Educ., INTERCOLLEGIATE ATHLETICS POLICY CLARIFICATION: THE THREE-PART TEST – PART THREE ("2010 Clarification"), attached as Exhibit A. OCR stated that an institution should assess interest periodically "so that the institution can identify in a timely and responsive manner any developing interests and abilities of the underrepresented sex." *Id*. at 7.

Notwithstanding that the 2010 Clarification suggests that Districts frequently survey students to determine their interest, the Districts have apparently never surveyed students about their interest in sports. Indeed, neither in their initial disclosures, nor in response to requests for production have the Districts produced any evidence of a questionnaire.

Under the 2010 Clarification one of the indicators that is used to evaluate the interests of girls in sports is "results of surveys or questionnaires of students and admitted students regarding interests in particular sports." *Id.* at 6. Plaintiffs propose a simple and short survey of all girls in the Districts to address topics directly at issue in the remainder of this lawsuit.

Plaintiffs have identified a company that performs electronic surveys of students' interest in sports. That company, LifeTrack Services, Inc. ("LifeTrack") has performed surveys of

2

interest for dozens of schools and school districts both in its home state of Washington, where surveys similar to those described in the 2010 Clarification are required by state law, *see* Wash. Admin. Code § 392-190-020, and in other states where institutions are interested in evaluating students' interest to be in compliance with Title IX. *See* Declaration of LifeTrack, attached as Exhibit B.

LifeTrack will charge $5,600 for the survey, which Plaintiffs will pay. However, Plaintiffs cannot perform the survey on their own. Plaintiffs do not have contact information or a viable way to contact all the female students in the Districts.

LifeTrack proposes, for the most successful survey, having it administered in classes while students are in school. This method has numerous advantages. First, the response rates are much higher. An in-class survey will typically result in at least an 80% response rate among students. In contrast, a survey that is simply emailed to students using their school-assigned emails will typically get a response rate between 15% and 40%. This method has the additional advantage of making certain that students, and not parents or others, are the ones responding to the survey.

The survey is web-based and could be completed in class on computers or the students' phones in a matter of about one minute. All that is needed is for each student to get the web address and navigate a web-browser. This will be a simple, short survey asking a handful of questions. A sample of the proposed survey is attached as Exhibit C. The survey length will vary one question depending on student responses. Specifically, Question 4 asks where the student has ever played "girls-only flag football ("Powder Puff") at your high school" – discovery has shown that more than 750 girls participated in girls-only intramural football games at their schools in 2018 – and if the students respond that they have played, the student is asked an additional question: "why did you play girls-only flag football?" In any event, depending on the student responses the survey will be only five or six questions.

Further, the survey asks no student-identifying information and will be anonymous. LifeTrack will establish a separate link for each school so responses can be tracked by school,

but not by student. Because the survey does not ask the students for any identifying information, and no survey response will be traceable to a specific student, any privacy concerns are minimal.

Alternatively, LifeTrack could administer the survey by simply sending a link to each student's school-assigned email address, or by texting a link to students who have provided that information to administrators at their school. The disadvantages of performing the survey this way are that it will likely lead to a lower response rate and it is more likely that people other than the survey participant (such as parents or siblings) will complete the survey. In short, the results will be less statistically significant and overall less reliable as a measure of overall student interest.

The Court recognized that a survey of interests was an important part of the case when ruling on the numerosity issue of Plaintiffs' motion to certify a class. D.E. 115 at 7. Further, as explained above, the 2010 Clarification establishes that surveys are an important part of Title IX evaluation of interests. *See* Ex. A at 8.

Plaintiffs conferred with counsel for the Districts. Counsel for the Districts refused to cooperate by voluntarily causing her clients to administer any survey provided by Plaintiffs. Counsel for the Districts represented that the Districts – after decades of not assessing student interest notwithstanding direction from OCR that such assessments were vital to compliance with Title IX – have decided to possibly conduct their own assessment and that Districts' counsel did not believe that Plaintiffs separate survey was appropriate.

Plaintiffs and their consultant are prepared to conduct the survey as soon as the Court enters an order directing the Districts to cooperate in the survey.

////
////
////
////
////

4

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for leave to conduct a survey of female students' interests to play football and order Defendants' cooperation by providing its female students access to a computer and arranging to have the students take the survey during school hours.

DATED: February 20, 2019                              S<small>MITH</small> W<small>ASHBURN</small>, LLP

                                                                                         /s/ D. Loren Washburn
                                                                      D. Loren Washburn
                                                                      *Attorneys for Plaintiffs*

4816-4456-6408, v. 1

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means:

Rachel G. Terry
Michael J. Teter
UTAH ATTORNEY GENERAL'S OFFICE
160 E. 300 S. 6th Floor
P.O. Box 140856
Phone: (801) 366-0100
rachelterry@agutah.gov
mteter@agutah.gov

*Attorneys for Defendants Canyon School District, Granite School District, Jordan School District, James Briscoe, Martin Bates, and Patrice Johnson*

Mark O. Van Wagoner
SAVAGE YEATES & WALDRON, PC
170 S. Main Street, #500
Salt Lake City, Utah 84101
Phone: (801) 328-2200
movw@comcast.net

D. Craig Parry
Michael S. Lehr
PARR BROWN GEE & LOVELESS
101 South 200 East, Ste 700
Salt Lake City, UT 84111
Phone: (801) 532-7840
cparry@parrbrown.com
mlehr@parrbrown.com

*Attorneys for Defendant, UHSAA*

/s/ Melina Hernandez

4816-4456-6408, v. 1