RACHEL GEORGE TERRY (10769)
MICHAEL J. TETER (16734)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: rachelterry@agutah.gov
         mteter@agutah.gov

*Attorneys for Jordan School District, Granite School District, Canyons School District, Patrice Johnson, Martin Bates and James Briscoe*

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| S.G., by and through her general guardian, BRENT GORDON; L.D., by and through her general guardian, JASON DIXON; B.S., by and through her general guardian, LISA SIMMONS; M.C., by and through her general guardian, BARBARA CALCHERA; D.R., by and through her general guardian, BRET ROBISON; I.N., by and through her general guardian, MANUEL NOGALES, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JORDAN SCHOOL DISTRICT, GRANITE SCHOOL DISTRICT, CANYONS SCHOOL DISTRICT, UTAH HIGH SCHOOL ACTIVITIES ASSOCIATION, INC., PATRICE JOHNSON, MARTIN BATES, and JAMES BRISCOE,<br><br>Defendants. | **DISTRICTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br><br>Case No. 2:17-CV-00677-RJS-DBP<br><br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

    I.   AS USED IN THE REQUESTS FOR ADMISSION, "GIRLS" IS VAGUE AND AMBIGUOUS, BUT THE DISTRICTS ANSWERED THE REQUEST DESPITE THAT AMBIGUITY ................................................................................................ 8

    II.  THE TERM "GIRLS-ONLY FOOTBALL" IS VAGUE AND AMBIGUOUS ................. 9

    III. THE DISTRICTS RESPONDED PROPERLY TO THE REQUESTS FOR ....................... ADMISSION. ............................................................................................................ 10

    IV. PLAINTIFFS HAVE NOT PROVEN THE DISTRICTS' RESPONSES ARE FALSE. ...................................................................................................................... 12

    V.  SANCTIONS ARE NOT WARRANTED ....................................................................... 14

CONCLUSION ..................................................................................................................... 14

Defendants Jordan School District, Granite School District, and Canyons School District ("Districts"), by and through counsel Rachel G. Terry and Michael J. Teter, Assistant Utah Attorneys General, respectfully submit this Response to Plaintiffs' Motion to Compel Discovery.

## INTRODUCTION

Common words have different meanings in different contexts – and that is all the truer in the legal realm. Indeed, Plaintiffs presently seek *sanctions* against Defendants in a civil action in which they want the Utah High School Activities Association ("UHSAA") to *sanction* girls football. Thus, context matters, not only with regards to determining what a word means, but also in resolving discovery disputes.

Plaintiffs have served extensive discovery requests on the Districts, including multiple rounds of interrogatories and requests for production. The Districts have responded to those without a dispute arising. Relying on information provided as part of the Districts' responses to that discovery, Plaintiffs drafted requests for admission that did not contain a single definition.[1] And those requests employ words with broad, everyday meanings in the context of nuanced litigation. Plaintiffs took this undefined route while acknowledging that answers to past discovery had raised concerns about ambiguous terms.[2] The Districts had to accept the requests as served, which is to say, the Districts could not define the ambiguous terms for Plaintiffs. In the various meet-and-confer letters, and in their motion, Plaintiffs insist the Districts are willfully "assaulting" the English language.[3] In fact, it is Plaintiffs who are playing games with their phrasing and with their representations to the Court.

---

[1] *See* Pls.' Mem., Ex. F (Dkt. No. 126-6).
[2] Pls.' Mem. 3 (Dkt. No. 126).
[3] *Id.*

Take, for instance, their insistence that there can be no dispute over what "girls" means. In this case's context, "girls" has a more specialized meaning than the common understanding, because it will not be enough for Plaintiffs to show sufficient interest among "girls," but instead they will be required to demonstrate sufficient interest among female high school students eligible to compete in interscholastic competition. Put another way, while every "female high school student eligible to compete in interscholastic competition" is a "girl," not every "girl" is a "female high school student eligible to compete in interscholastic competition." Plaintiffs' chose to use "girl" in their requests for admission and refused to define the term when asked to do so, instead resorting to sarcasm.[4] As a result, the Districts provided a definition of "girls" to address the ambiguity, which Plaintiffs challenge without offering an alternative.

The Second Amended Complaint states, "Over 200 girls participate in girls football who live within the Districts' boundaries and either currently attend or will attend high school in one of the Districts' schools."[5] At his deposition, Mr. Gordon acknowledged that this number – 200 girls – includes fifth- and sixth-graders participating in the Utah Girls Tackle Football League.[6] In fact, Mr. Gordon's testimony and exhibits show that of the 200 girls in the league, approximately two-thirds fall below high school age.[7] Therefore, in the context of this litigation, "girls" has included elementary- and middle school-aged students.

---

[4] For example, in their January 25, 2019 meet-and-confer letter, Plaintiffs stated, "As an aside, how excited is Sean Reyes going to be to see our motion where we suggest that his Attorney General's office finds the word 'girls' to be ambiguous, or the inevitable press coverage of the issue?" Pls.' Mem., Ex. C at 9, n. 4 (Dkt. No. 126-3).
[5] Second Am. Compl. at ¶ 95 (Dkt. No. 76).
[6] Ex. 1, B. Gordon Dep. 113:16-24.
[7] *Id*. at 126:12-129:4.

Seven[8] of the challenged requests for admission ask a version of the following:

> Admit that either 218 girls or 268 girls would be a sufficient number to form a viable football team that could participate in interscholastic competition within Riverton High School's normal competitive region.[9]

But whether that answer is true or not actually *does* depend on the definition of girls. If "girls" means fifth- and sixth-graders like those in the Utah Girls Tackle Football League, then it would not be sufficient to form a viable high school football team participating in interscholastic competition. However, if by "girls" the Plaintiffs meant female high school students eligible to compete in interscholastic competition, then the Districts could admit the request. It is reasonable for the Districts to want clarification before admitting or denying such an open request for admission since an admission deems the matter proven.

While Plaintiffs focus on the Districts' objection to the term "girls" as vague and ambiguous, the Districts' response to the request for admission sought to provide Plaintiffs with the answer they needed, while still protecting the Districts' interests given the ambiguous nature of the request. Specifically, the Districts stated:

> In addition to the above objections, Jordan objects to Request No. 11 as vague and ambiguous in the use of the terms "viable football team," "girls," and "normal competitive region." Jordan also objects to Request No. 11 because it is an incomplete hypothetical that would require Jordan to admit facts not presented. Subject to the foregoing objections, Jordan responds as follows: Jordan admits that if there were either 218 or 268 female students who are eligible to play under the applicable policies and regulations and are willing and able to meet the requirements and commitments of the hypothetical football team, then there would be enough female students to form a football team. Assuming that "normal

---

[8] *See* Pls.' Mem., Ex. G., Jordan Requests for Admission Nos. 11, 13, 15, 16, and 17; Granite Request for Admission No. 4; and Canyons Request for Admission No. 4.
[9] *See* Pls.' Mem., Ex. G at 10, Jordan Request for Admission No. 11.

3

> competitive region," as used in Request No. 11 is referencing the regions and classifications defined by the UHSAA, Jordan denies that the hypothetical team referenced in Request No. 11 could participate in interscholastic competition in Riverton High School's "normal competitive regions" because Jordan is unaware of any existing girls-only football teams consistent with its understanding of the term as used in Plaintiffs' Second Amended Complaint and other documents at any of the high schools within Riverton High School's "normal competitive region."[10]

Finally, throughout their twenty-six page motion, Plaintiffs insist the Districts are playing games and acting unreasonably. The context reveals the opposite. For example:

- Plaintiffs tell this Court that neither "girls-only football" nor "girls only football" appear in the Second Amended Complaint.[11] But the phrase "girls high school football teams" appears throughout,[12] as does "girls football"[13] and "girls football teams"[14] as well as references to the Utah Girls Tackle Football League,[15] which is a "girls-only football" league.

- Plaintiffs insist in meet-and-confer letters and to this Court that commonsense must mean that "girls-only football" includes powder puff,[16] while stating in the Second Amended Complaint that none of the Districts offer "girls football teams."[17]

---

[10] *Id*. at 10-11.
[11] Pls.' Mem. 16-17 (Dkt. No. 126).
[12] Second Am. Compl. at ¶¶ 10, 92, 118, 123 (Dkt. No. 76).
[13] *Id*. at ¶ 95.
[14] *Id*. at ¶¶ 117, 121, 182, 188-190.
[15] *Id*. at ¶¶ 96-98, 202-04.
[16] Pls.' Mem. 6, Ex. C, at 9.
[17] Second Am. Compl. at ¶¶ 188-190.

4

- Plaintiffs state in their meet-and-confer letter that, "All you had to do was read your [Response to Interrogatory No. 6] and then admit that it hadn't been false,"[18] yet base their motion to compel regarding eight requests for admission on the Districts doing precisely what Plaintiffs requested.[19]

- Plaintiffs rely on this Court's earlier grant of partial summary judgment on the issue of participation rates in athletic activities, while not including in that briefing any mention of powder puff football as "girls-only football."[20] But now that summary judgment on that issue has been granted, Plaintiffs insist that the Districts offer "girls-only football" in numbers that exceed all other athletic activities. If it's possible that powder puff could constitute "girls-only football" then there exists a material fact in dispute as to the participation numbers, which should have precluded summary judgment on that earlier-settled issue.

- Plaintiffs state that they intend to use powder puff participation numbers to prove interest in a girls tackle football team.[21] That's a new position, as evidenced by their omitting any reference to powder puff or its equivalent when asked in UHSAA's Interrogatory No. 2 to, "Set forth with reasonable particularity each and every factual basis for your allegation in paragraphs 74 and 88 of your Amended Complaint that 'there is sufficient interest among girls to sustain viable

---

[18] Pls.' Mem., Ex. C, at 9.
[19] Districts' response to the requests for admission state: "Jordan also admits that the information in its response to Plaintiffs' Interrogatory No. 6 is true and correct to the best of its knowledge." *See, e.g.*, Pls.' Mem., Ex. G, at 7.
[20] *See* Pls.' Motion for Partial Summary Judgment (Dkt. No. 14).
[21] Pls.' Mem. 8.

5

teams and a reasonable expectation for interscholastic competition.'"[22] Plaintiffs have not amended their response to that interrogatory to include powder puff. While Plaintiffs may change their theory and evidence, they should recognize that the changing nature of their theory requires the Districts to exercise caution when simply agreeing to open-ended requests for admission that contain no definitions.

- Plaintiffs would like Defendants and the Court to treat their requests for depositions with utmost urgency, going so far as to seek expedited consideration of their motion. For months, however, Plaintiffs have known that none of the individual plaintiffs are within Canyons School District's boundaries, which means Plaintiffs have no Title IX claim against Canyons. When Canyons informed Plaintiffs of its intent to file a motion for summary judgment on that point on February 14, 2019, Plaintiffs responded by stating that they had already identified new Plaintiffs within Canyons School District and could seek leave to amend their complaint for a third time by the next day. In other words, while they suggest the Districts have pushed deposition dates close to the end of discovery, Plaintiffs have been sitting on a proposed amended complaint that would add new plaintiffs, who Defendants would be entitled to depose. Importantly, it was through Defendants' deposition of the original Plaintiffs that the parties learned that none of them lived within Canyons' boundaries.

- Plaintiffs criticize the Districts for withdrawing objections to some terms after a meet-and-confer, suggesting the Districts could not amend their responses after

---

[22] Ex. 3, Pls.' Responses to UHSAA's First Set of Discovery to Plaintiffs.

6

receiving clarifications from Plaintiffs.[23] If that is their position, what is the point of meet-and-confers? If anything, the Districts' actions after the meet-and-confer demonstrate good faith. Moreover, while Plaintiffs suggest the Districts could not update their responses after the clarifications from the meet-and-confer, Plaintiffs argue that *their* meet-and-confer clarifications should assuage the Court of any concerns about the lack of any definitions in their requests for admission.

- Plaintiffs rejected offers to address all of the matters in their requests for admission by noticing a Rule 30(b)(6) deposition for each District Defendant.

In sum, Plaintiffs' memorandum reveals just three disputes animating their motion: (1) the Districts' objection to the vagueness of the term "girls"; (2) the Districts' objection to the term "girls-only football"; and (3) the wording of answers to particular requests for admission – wording that was drawn specifically from Plaintiffs' own letter.[24] As explained below, the terms relied on by Plaintiffs are vague and the challenged answers are proper under Rule 36(a)(4). For that reason, the Court should deny Plaintiffs' motion in full. Each party should bear their own costs, both for bringing this dispute to the Court and for any and all depositions.

---

[23] Pls.' Mem. 15, 19, n. 9.
[24] Plaintiffs correctly and fairly note that Granite's and Canyons' responses to Request for Admission No. 4 do not accurately reflect the fact that Granite and Canyons provided information for Powder Puff participation in response to Interrogatory No. 6. The basis for the error, however, is that Interrogatory No. 6 requested information for years prior to the 2018-2019, which neither Granite nor Canyons maintained. Granite and Canyons then supplemented their responses to Interrogatory No. 6 with information from the 2018-2019 school year. In responding to Request for Admission No. 4, Granite and Canyons referred to their original answers to Interrogatory No. 6 and failed to take into account the fact that they had supplemented their responses. This mistake, however, is not material to resolving the discovery dispute because Granite's and Canyons' amended responses to Request for Admission No. 4 will mirror those which Jordon provided and which Plaintiffs challenge. Granite and Canyons do plan to provide an amended response upon the Court resolving this matter.

I.  **AS USED IN THE REQUESTS FOR ADMISSION, "GIRLS" IS VAGUE AND AMBIGUOUS, BUT THE DISTRICTS ANSWERED THE REQUEST DESPITE THAT AMBIGUITY[25]**

Plaintiffs correctly state that this lawsuit is about "girls football" and that the parties are eighteen months into this matter. During the course of those eighteen months, Plaintiffs have used the term "girls" in ways that have broad, common meanings. The Second Amended Complaint refers to "girls" in the Utah Girls Tackle Football League – most of whom are not old enough for high school.[26] They also testified about middle school "girls" expressing interest in girls tackle football by raising their hands.[27] They have also used "girls" almost interchangeably with "female high school student eligible to compete in interscholastic competition." Those terms, however, are not interchangeable when it comes to the burden that Plaintiffs acknowledge they must show. This entire dispute could have been avoided or dealt with easily if Plaintiffs had defined the term in their original requests or done so during the meet-and-confer.

But more than that, what is the actual dispute here? Despite their concerns about the term "girls," the Districts responded substantively:

> Subject to the foregoing objections, Jordan responds as follows: Jordan admits that if there were either 218 or 268 female students who are eligible to play under the applicable policies and regulations and are willing and able to meet the requirements and commitments of the hypothetical football team, then there would be enough female students to form a football team. Assuming that "normal competitive region," as used in Request No. 11 is referencing the regions and classifications defined by the UHSAA, Jordan denies that the hypothetical team referenced in Request No. 11 could participate in interscholastic competition in Riverton High School's "normal competitive regions" because Jordan is

---

[25] This section addresses concerns raised regarding responses to the following requests for admission: Jordan Nos. 11, 13, 15, 16, and 17; Granite No. 4; and Canyons No. 4.
[26] Second Am. Compl. at ¶¶ 96-98, 202-204; Ex. 1, B. Gordon Dep. 126:12-129:4.
[27] Ex. 2, S. Gordon Dep. 31:13-16.

8

> unaware of any existing girls-only football teams consistent with its understanding of the term as used in Plaintiffs' Second Amended Complaint and other documents at any of the high schools within Riverton High School's "normal competitive region.

It is unclear to the Districts how the disagreement over the term "girls" actually renders the answer deficient.

## II.   THE TERM "GIRLS-ONLY FOOTBALL" IS VAGUE AND AMBIGUOUS[28]

This discovery dispute is driven in significant part by a disagreement over what is meant by "girls-only football," and whether that includes powder puff. Powder puff is a homecoming activity that takes place at some of the Districts' high schools where girls play intramural flag football. There is usually a single game and only a few practices, and the activity is limited to the week of homecoming. In a change of strategy, Plaintiffs now seek to make powder puff the benchmark for interest in "girls-only football" and asked the Districts to make admissions based on this revised definition of girls football.

The Second Amended Complaint states that none of the Districts "offer girls football teams."[29] In the briefing in support of Plaintiffs' motion for partial summary judgment on the issue of male versus female athletic participation numbers, Plaintiffs did not include students participating in Powder Puff football within the figures provided to the Court.[30] Further, the Second Amended Complaint does not include those numbers. Now, Plaintiffs offer a new theory that "girls-only football" is "inclusive of, if not coterminous with, "powder puff."[31] In other

---

[28] This section addresses concerns raised regarding responses to the following requests for admission: Jordan Nos. 11, 13, 15, 16, and 17; Granite No. 4; and Canyons No. 4.
[29] Second Am. Compl. at ¶¶ 188-190.
[30] *See* Pls.' Mot. for Partial Summ. J. (Dkt. No. 14).
[31] Pls.' Mem. 3 (Dkt. No. 126).

9

words, for purposes of a request for admission that Plaintiffs will use to prove their case, "girls-only football" includes powder puff, but when the issue was whether the Districts offer "girls football teams" or the participation rates of male and female students, the Plaintiffs did not want to include Powder Puff.

It's reasonable for the parties to disagree over whether powder puff constitutes a girls-only football team, but that just demonstrates an ambiguity in the term. While Plaintiffs insist that the term is not vague or ambiguous, they also acknowledge that "we do not share your definition of 'girls-only football.'"[32] Plaintiffs may wish to fault the Districts for that disagreement over the term, but as the Second Amended Complaint and briefing on the motion for partial summary judgment show, it's Plaintiffs who are changing the definition to suit their interests in the moment.

### III. THE DISTRICTS RESPONDED PROPERLY TO THE REQUESTS FOR ADMISSION.[33]

Despite objections to the vague terms and concerns about how Plaintiffs may seek to misuse the responses, the Districts answered each request substantively, in a way that would allow Plaintiffs to prove what they could properly seek to prove through the admissions. But more than that, the Districts sought to provide a response in the form that Plaintiffs specifically requested.

---

[32] Pls.' Ex. E, at 3 (Dkt. No. 126-5).
[33] This section addresses all of the objected-to requests for admission.

Eight of the requests for admission[34] asked the Districts to address whether "more female students participated in girls-only football…than participated in any sanctioned sport." In their meet-and-confer letter, Plaintiffs stated:

> Our RFA No. 10 was not some decontextualized request. You had to know where we got the numbers 268 and 218; they were from your client's earlier response. In order to prove the fact at issue in Request No. 10 we need not rely on anything more than your client's response to Interrogatory No. 6. You told us the number of "girls" who "participated" in "girls-only flag football," or "powder puff" for each year. All you had to do was read your RFA and then admit that it hadn't been false.[35]

Relying on Plaintiffs' meet-and-confer letter, the Districts amended their response to these requests and stated, "Jordan admits that the information provided in its Title IX reports is true and accurate to the best of its knowledge. Jordan also admits that the information in its response to Plaintiffs' Interrogatory No. 6 is true and correct to the best of its knowledge."[36] Now, Plaintiffs criticize this response as improper.[37]

The other objected-to responses also provided substantive answers.[38] As noted above, Plaintiffs requested the Districts admit that "218 girls or 268 girls would be a sufficient number to form a viable football team that could participate in interscholastic competition within

---

[34] Pls.' Ex. G, Jordan Nos. 4, 6-10, 12, and 14.
[35] Pls.' Ex. C, at 9. Where the letter states "read your RFA," Plaintiffs likely meant "read your Interrogatory response."
[36] *See, e.g.*, Pls.' Ex. G, at 7.
[37] Plaintiffs state: "[T]hey have elected to respond by merely affirming that they did not lie in their prior interrogatories and that documents previously produced in discovery are accurate. This defeats the purpose of a request for admission, expands, rather than minimizes discovery, and has wasted dozens of hours of Plaintiffs' time." Pls.' Mem. 4.
[38] *See* Pls.' Ex. G, Jordan Nos. 11, 13, 14, 16 and 17; Granite No. 4; Canyons No. 4.

11

Riverton High School's normal competitive region." After objecting because of vagueness, the Districts provided a substantive response that stated:

> Jordan admits that if there were either 218 or 268 female students who are eligible to play under the applicable policies and regulations and are willing and able to meet the requirements and commitments of the hypothetical football team, then there would be enough female students to form a football team.

The Districts also complied with Rule 36(a)(4), which states: "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Fed. R. Civ. P. 36(a)(4).

The Districts' responses were complete and, where necessary, included qualifiers that would provide Plaintiffs with the answers they requested.

## IV. PLAINTIFFS HAVE NOT PROVEN THE DISTRICTS' RESPONSES ARE FALSE.

Plaintiffs request that the Court "[e]nter an order that Plaintiffs have proven" that the number of girls who participated in powder puff is sufficient to form a "football team that could participate interscholastic competition within the [Districts'] normal competitive region." Far from proving the matter, Plaintiffs' arguments demonstrate that the relevant requests for admission are incomplete hypotheticals.

Plaintiffs argue that the Districts must admit there are sufficient teams to engage in interscholastic competition because 11 out of the Districts' 18 total high schools offer powder puff. As Plaintiffs allege and acknowledge, there are no existing girls football teams. To make the admissions Plaintiffs demand would require each District to make several assumptions. Each District would have to assume, among other things, that: the information provided by the other

12

districts is accurate; every school that offers powder puff would have sufficient interest to form a girls football team; and all of the schools that offer powder puff are within the undefined "normal competitive region." But these are requests for *admission*, not requests for *assumption*.

The requests would also require the Districts to make assumptions as to the meaning of "normal competitive region." In Utah, interscholastic competition between schools is organized according to UHSAA regions and classifications.[39] Some of the schools Plaintiffs identify as the basis for interscholastic competition in girls football would not compete during regular season and/or championship under the current organization. Thus, an admission would require another assumption that these teams would have a competition structure that does not currently exist.

Finally, Plaintiffs' Requests rely on a false equivalency of powder puff and competitive girl football. Plaintiffs have not presented any facts or information to substantiate a comparison between the two. While both girls-only football and powder puff involve playing a form of football, they are fundamentally different. Powder puff does not involve the time, commitment, structure, equipment, or funding, among other things, that a girls-only football program would require should it be implemented by the Districts.

Plaintiffs have failed to prove that the Districts' denials to Requests to Jordan 11, 13, 15, 16 and 17 and Request 4 to Granite and Canyons are false. Therefore, the Court should deny Plaintiffs' Motion.

---

[39] See Ex. 4, UHSAA Regions and Classifications.

## V. SANCTIONS ARE NOT WARRANTED

Plaintiffs ask the court to sanction the Districts by expanding the number of depositions beyond the 15 currently allowed[40] and requiring the Districts to pay for those depositions as well as the costs for filing the Motion.

Sanctions are not appropriate for failure to admit if "(c) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; (d) there was other good reason for the failure to admit."[41] For the reasons set forth above, the Districts' responses are reasonable and appropriate. Moreover, Plaintiffs have not identified why additional depositions are necessary nor explained why the information they seek cannot be more efficiently obtained through 30(b)(6) depositions of the Districts. To the extent any additional depositions are awarded, each party should bare its own fees and costs.

## CONCLUSION

The dispute here is one of Plaintiffs' own making. They did not include definitions in their requests for admission. Parties include definitions precisely to avoid misunderstandings and disagreements like these. When Districts raised concerns about undefined terms to Plaintiffs' attention, Plaintiffs responded with hyperbole, condescension, and insults. Even then, Districts offered to make 30(b)(6) deponents available so that Plaintiffs could get the information they sought. Plaintiffs rejected that approach, preferring one that would not require them to clarify ambiguous terms and explain the meaning of their questions.

Districts have acted appropriately and properly throughout the course of this dispute.

---

[40] Scheduling Order (Dkt. No. 27).
[41] Federal Civ. P. R. 37(c)(2)(C)-(D).

14

Plaintiffs' motion should be denied. Each party should bear their own costs, both for bringing this dispute to the Court and for any and all depositions.

Dated this 20th day of February, 2019.

                OFFICE OF THE UTAH ATTORNEY GENERAL

                /s/ Rachel George Terry
                RACHEL GEORGE TERRY
                MICHAEL J. TETER
                Assistant Utah Attorney General
                *Attorney for Districts*