FILED
United States Court of Appeals
Tenth Circuit

January 4, 2023

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

BRENT GORDON, as general guardian of S.G.; JASON DIXON, as general guardian of L.D.; LISA SIMMONS, as general guardian of B.S.; BARBARA CALCHERA, as general guardian of M.C.; BRET ROBISON, as general guardian of D.R.; MANUEL NOGALES, as general guardian of I.N.; I. C., a minor,

    Plaintiffs - Appellants,

v.

JORDAN SCHOOL DISTRICT; GRANITE SCHOOL DISTRICT; CANYONS SCHOOL DISTRICT; UTAH HIGH SCHOOL ACTIVITIES ASSOCIATION; MARTIN BATES; ANTHONY GODFREY, Superintendent of Jordan School District; RICK L. ROBINS,

    Defendants - Appellees.

No. 21-4044
(D.C. No. 2:1-CV-00677-HCN)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

---

[*] This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

_____

This case began with an effort to compel the creation of a separate football league for high-school girls. Local officials declined, stating that it was enough for the girls to participate on their schools' coed football teams. The girls' parents sued and sought class certification, invoking Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), and the Fourteenth Amendment's Equal Protection Clause. The district court certified a class on the equal protection claims and denied certification on the Title IX claims. On the equal protection claims, the district court conducted a bench trial and found no constitutional violation. These rulings led to this appeal.

In deciding the appeal, we address two main issues:

1. **Refusal to certify a class on the Title IX claims.** In considering certification of a class on the Title IX claims, the district court found no commonality because some aspects of the claims involved individualized inquiries. But the presence of some individualized inquiries doesn't prevent a common question of law or fact. So we conclude that the district court erred by applying the wrong standard on commonality.

2. **Rejection of the equal protection claims based on the trial evidence.** Based on the trial evidence, the district court rejected the equal protection claims, finding that (1) the policy of a gender-neutral football team had been facially neutral and (2) no discriminatory purpose had existed. The allowance of coed football teams was indeed gender neutral, and the court didn't clearly err by finding no discriminatory purpose. So we uphold the district court's rejection of the equal protection claims.

1.  **We have appellate jurisdiction.**

The threshold question is appellate jurisdiction. When the case began in district court, all of the girls were minors (under eighteen) and represented by their parents. By the time that the parents filed the notice of appeal, however, six of the seven girls had turned eighteen. And all of the girls have now graduated from high school. These developments trigger issues involving sufficiency of the notice of appeal, substitution of parties, and mootness.

A.  **The notice of appeal on class-related issues is sufficient.**

The defendants seek dismissal of the appeal on class-related issues, arguing that (1) the notice of appeal didn't identify the daughters as the appellants and (2) six of the seven parents lacked standing to file the notice of appeal because their daughters had already turned eighteen. These arguments don't merit dismissal of the appeal.

The notice of appeal identified the appellants as "all plaintiffs and Sam Gordon, both individually and as the representatives of the certified class." Appellants' App'x vol. 2, at 554 (cleaned up). This reference to "all plaintiffs" would suffice if it named at least one person qualified to appeal on behalf of the class. Fed. R. App. P. 3(c)(3).

The notice did identify at least one parent with the power to appeal (Delainee Robison's father). Though six of the seven girls had already turned eighteen, one of the girls (Delainee Robison) was still seventeen

3

when the parents filed the notice of appeal. So the defendants concede that Delainee Robison's father could appeal on behalf of his daughter and the putative classes that she represented. We agree, concluding that the father's authority to file the notice of appeal sufficed for Delainee Robison and the designated classes that she represented. *See* Fed. R. App. P. 3(c)(3).

    **B.**    **The girls are entitled to substitution as the appellants.**

Because all of the girls are now eighteen, they seek substitution as the appellants, replacing their parents (who had represented the girls as guardians). The defendants don't object, and we grant the motion to substitute. *See* Fed. R. App. P. 43(b).

    **C.**    **The girls' individual claims are moot.**

Though the notice of appeal triggered our jurisdiction on class-related issues, the defendants argue that the girls' individual claims became moot when they graduated high school. The girls declined to respond in their reply brief, waiving any non-obvious defects in the defendants' argument on mootness. *See Eaton v. Pacheco*, 931 F.3d 1009, 1031 (10th Cir. 2019).

We see no obvious defect in the defendants' argument. When students seek to enjoin their high schools and then graduate, there's no reasonable basis to expect the alleged injury to recur. *Bauchman ex rel.*

4

*Bauchman v. W. High Sch.*, 132 F.3d 542, 548 (10th Cir. 1997). So the girls' individual claims are moot.

2. **On the Title IX claims, the district court applied the wrong standard on commonality.**

On the Title IX claims, the girls sought certification of a class. The court denied certification, reasoning that the girls had failed to show commonality. Fed. R. Civ. P. 23(a)(2). This showing required identification of only a single issue shared by members of the class. *DG v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).

We consider whether the district court applied the correct standard on commonality. For this inquiry, we apply de novo review. *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1187 (10th Cir. 2006).

To prevail on the Title IX claims, each class member had to prove a reasonable expectation of competition for girls' teams. *See Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 828 (10th Cir. 1993). So each class member appeared to share this burden.

Despite the apparent sharing of this burden, the district court reasoned that differences existed on the level of interest at each school. But these variations would affect a separate inquiry, predominance—not commonality. *See Naylor Farms, Inc. v. Chaparral Energy,* LLC, 923 F.3d 779, 789 (10th Cir. 2019) (discussing the predominance inquiry). Predominance wasn't required because the girls were seeking certification

5

under Fed. R. Civ. P. 23(b)(2). *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 2010).

The district court erred by focusing on differences between schools rather than the need for all class members to prove a reasonable expectation of competition within the three districts. The girls argued in district court and on appeal that competition would be reasonable if the districts had enough high schools able to participate. According to the girls, that inquiry involved consideration of the girls' collective interest within the three districts.

Neither the district court nor the defendants have addressed the need to consider the collective interest in girls' football throughout the three districts. That consideration would appear to affect the ability of each class member to prove a reasonable expectation of competition. For example, even if several high schools could fill rosters for girls-only teams, those teams needed opponents. To determine the availability of enough opponents, a court would need to consider the collective interest throughout the three districts.

On its face, this consideration would appear common to each class member. The district court overlooked the potential commonality of this inquiry based on other inquiries that might vary from school to school. The district court thus erred by applying the wrong standard for commonality.

6

The school districts argue that any error in denying certification would be harmless "because the district court properly ruled against the [girls] on the merits of the [individual] Title IX claims." School Districts Appellees' Answer Br. at 34. But we can't consider this argument.

Because the individual Title IX claims are moot, the only remaining Title IX claims are those asserted by the proposed class. And we can't reach the merits of the Title IX claims until the proposed class is certified. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 n.7 (1980) ("A named plaintiff whose claim expires may not continue to press the appeal on the merits until a class has been properly certified."); *see also Pederson v. La. State Univ.*, 213 F.3d 858, 867, 872 n.14 (5th Cir. 2000);[1] *see generally Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297, 305 (3d Cir. 2016) ("[S]o long as a plaintiff files a motion to certify a class when he still has a live claim, the mooting of that claim while the motion is pending precludes the court from reaching the merits but does not preclude it from deciding the certification motion.").

The district court decided the merits of the Title IX claims by the girls individually but not by the proposed class. And we can't reach the

---

[1] There a group of female college students sued under Title IX, seeking an injunction. But they graduated during the course of the litigation. They appealed, but the Fifth Circuit concluded that (1) the individual claims had become moot when the students graduated college and (2) the appeals court could consider the denial of class certification but not the merits. *Pederson*, 213 F.3d at 867, 872 n.14.

7

merits of the proposed class's claims until a Title IX class is certified. Because no class has been certified, we can't find the error harmless based on the merits of the underlying Title IX claims.

The Supreme Court addressed a similar issue in *U.S. Parole Commission v. Geraghty*, 445 U.S. 388 (1980). There a federal prisoner sued individually and on behalf of a proposed class, challenging the validity of federal parole guidelines. *Id.* at 393. The district court denied class certification and granted summary judgment to the defendants. *Id.* After the appeal was filed, the prisoner completed his sentence, rendering his individual claims moot. *Id.* at 394. But the issue on class certification remained. The Court of Appeals held that the district court had erred in denying certification and considered the merits to avoid "improvidently dissipat[ing] judicial effort." *Id.* at 394–95 (quoting *U.S. Parole Comm'n v. Geraghty*, 579 F.2d 238, 254 (3d Cir. 1978)).

The Supreme Court concluded that

- the Court of Appeals had obtained jurisdiction only on the challenge involving denial of class certification and

- consideration of the merits would be "inappropriate."

*Id.* at 404, 408. For these conclusions, the Supreme Court explained that if the Court of Appeals were to uphold the denial of certification, "the controversy on the merits [would] be moot." *Id.* at 408; *see also id.* at 404 (stating that if the court determines that class certification was properly

denied, "the claim on the merits must be dismissed as moot"). As a result, the Supreme Court cautioned that the Court of Appeals couldn't consider the merits of the proposed class's claims until the district court had an opportunity to revisit certification. *Id.* at 404.

Given the Supreme Court's caution about considering the merits of the proposed class's claims prior to certification, we must confine our review to the denial of class certification. That ruling rested on the wrong standard, so we must reverse and remand for reconsideration of class certification on the Title IX claims.

**3.    The district court didn't err by finding that the defendants' coed football program had satisfied the Equal Protection Clause.**

The district court certified a class on the equal protection claims and conducted a bench trial. After the evidence closed, the court found that

- the defendants' football program was facially neutral and
- the defendants had no discriminatory purpose.

We uphold these findings.

The level of scrutiny varies based on the nature of the disputed policy. When the policy is facially neutral, courts consider only the existence of a rational basis; when the policy bears facial classifications based on gender, courts require an "exceedingly persuasive justification." *See Price-Cornelison v. Brooks*, 524 F.3d 1103, 1110 (10th Cir. 2008) (applying the test for a rational basis when the policy is facially neutral);

9

*Kirchberg v. Feenstra*, 450 U.S. 455, 461 (1982) (stating that an "exceedingly persuasive justification" is required for a program that discriminated based on gender).

To determine whether the policy was facially neutral, we consider the policy's treatment of gender. The policy drew no distinction based on gender, allowing girls and boys to play on the same football teams. So the district court properly concluded that the policies were facially neutral.

The girls insist that

- they received less playing time on the coed teams than they would have had on an all-girls team and

- with more playing time, the girls could have developed valuable skills.

But the advantages of a girls-only league wouldn't cast doubt on the facial neutrality of coed teams.

The girls point to cases where institutions discriminated against female or Black applicants by relegating them to inferior institutions. *See United States v. Virginia*, 518 U.S. 515, 520–21 (1996) (excluding women from a prestigious state military institution but admitting them to an institution that did not provide the same rigorous educational environment); *Sweatt v. Painter*, 329 U.S. 629, 634–35 (1950) (excluding Black applicants from a law school but permitting them to apply to a law school that did not provide the same quality of education or career prospects). But the defendants haven't excluded the girls; they can play

alongside boys on the same teams. Given the ability of girls and boys to play on the same teams, the district court didn't err in regarding the policy as facially neutral.

The girls point out that the Constitution sometimes permits separate programs for girls and boys. Certainly the Constitution doesn't bar separation of all athletic programs for girls and boys. But just because the Constitution *permits* separate teams for girls and boys doesn't mean that the Constitution *requires* separate teams. The question here is not whether the Constitution would have permitted a girls-only team, but whether a program is facially neutral when it allows girls and boys to participate on the same team. That program is facially neutral even if the defendants could have separated the football programs for girls and boys.

Though the policy itself was facially neutral, we'd intensify our scrutiny if the policy had masked a discriminatory purpose. *Vill. of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977). Alleging such a purpose, the plaintiffs point to evidence that

- girls participated in football less frequently than boys,
- the defendants had discriminated against girls in the past, and
- the defendants had offered girls' teams in other sports.

Though boys showed greater interest in football than girls, the district court found no policy or practice discouraging girls from playing football. Some girls explained that they hadn't played football because

they were too small and could have obtained injuries, pointing out that more girls might play if they were to compete against girls-only teams. But the court could reasonably question the number of girls that would play even when competing against girls-only teams.

The girls also refer to the availability of girls' teams in other sports. According to the girls, the defendants' discriminatory purpose is reflected in the availability of girls-only teams in other sports. The defendants countered with evidence of limited resources. For example, some evidence suggested that the creation of girls-only teams would require schools to take fields away from other sports. That evidence allowed a reasonable factfinder to reject a discriminatory purpose.

The girls also argue that the district court's explanation itself improperly relied on gendered stereotypes about "cultural attitudes." Appellants' App'x vol. 2, at 529. The district court did not define "cultural attitudes," and the girls characterize this term as a stereotype about girls' disinterest in sports.

The girls' characterization rests on speculation. The court more likely was referring to the evidence that boys had shown greater interest in playing football than girls. The court's reliance on this evidence didn't suggest an improper stereotype.

The district court could have relied more heavily on the girls' evidence of a discriminatory purpose. But we consider only whether the

district court clearly erred. *Curtis v. Okla. City Pub. Schs. Bd. of Educ.*, 147 F.3d 1200, 1217 (10th Cir. 1998). In our view, the district court didn't clearly err. Even if the district court could have found a discriminatory purpose, a contrary finding was at least permissible. The high schools allowed every girl to play alongside boys on the football teams. Even though the girls might have benefited from having their own teams, the district court had a reasonable evidentiary basis to reject the allegation of a discriminatory purpose.

**4.   Conclusion**

Because the girls have turned eighteen, we substitute them for their parents. The girls' individual claims became moot when they graduated high school. But we still have jurisdiction to address the class-related claims.

On the Title IX claims, the district court erred by denying class certification. In denying certification, the court relied on variations between schools. But the element at issue—commonality—required the presence of only a single legal or factual issue in common among members of the class. And here, each class member shared a factual issue involving the reasonableness of an expectation of competition. So we reverse and remand the Title IX claims for reconsideration of commonality and the other requirements for class certification.

On the equal protection claims, we affirm the judgment for the defendants. The district court didn't err in finding a facially neutral policy and rejecting the allegation of a discriminatory purpose. Girls could play alongside boys, and the coed programs didn't deprive the girls of an opportunity otherwise available to boys.

                              Entered for the Court


                              Robert E. Bacharach
                              Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

| | |
|---|---|
| Christopher M. Wolpert<br>Clerk of Court | Jane K. Castro<br>Chief Deputy Clerk |

January 04, 2023

Brent Gordon
Gordon Law Firm
3423 Merlin Drive
Idaho Falls, ID 83404

Trinity S. Jordan
David Loren Washburn
Armstrong Teasdale
222 South Main Street, Suite 1830
Salt Lake City, UT 84101

**RE:**   21-4044, Gordon, et al v. Jordan School District, et al
Dist/Ag docket: 2:17-CV-00677-HCN

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc: Joshua Daniel Davidson
Michael S. Lehr
Douglas Craig Parry
Alison Somin
Peggy E. Stone
Caleb Randall Trotter
Mark O. Van Wagoner

CMW/mlb